UNITED STATES DISTRCT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

MPS ENTERTAINMENT, LLC, a
New Jersey Limited Liability Company,
and MICHAEL P. SORRENTINO,
an individual,

          Plaintiffs,

vs.

ABERCROMBIE & FITCH STORES,
INC., an Ohio corporation

          Defendant.

_____/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, MPS ENTERTAINMENT, LLC ("MPS") and MICHAEL P. SORRENTINO

("Sorrentino") (collectively "Plaintiffs"), by their attorney and for their Complaint against

Defendant, ABERCROMBIE & FITCH STORES, INC. ("Abercrombie" or "Defendant"), allege

as follows:

## JURISDICTION AND VENUE

This is a complaint for Trademark Infringement, Unfair Competition and False

Description arising under §§ 31 and 43 of the Lanham Act, 15 U.S.C. §§1114(1) (Trademark

Infringement) and 1125(a) (Unfair Competition and False Description), for Unfair Business

Practices arising under Florida Statutes §§ 495.131, 495.151 and 540.08 and for injury to

business reputation under common law.

1.      This Court has original subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1338(a) and 15 U.S.C. § 1121.  This Court has related claim jurisdiction over the state

law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367. The Court has on reasoning

jurisdiction over Defendant who conducts business in this district, and because Defendant

directed its wrongful actions and has caused damage to Plaintiffs here in the State of Florida.

 2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in as much as a

substantial part of the events or omissions giving rise to the claims for relief occurred in this

judicial district.

## PARTIES

 3. Plaintiff, MPS, is and at all times mentioned herein was, a limited liability

company organized and existing under the law of the State of New Jersey, having a principal

place of business in Miami, Florida and in New Jersey. At all times herein, Plaintiff, MPS has

been engaged in the business of developing, marketing and distributing goods and services under

the trademarks "The Situation" and "G.T.L." which is an acronym for "GYM TAN

LAUNDRY", a mark made popular by Plaintiffs.

 4. MPS is a limited liability company controlled and owned by Sorrentino and his

brother Marc Sorrentino. Sorrentino is an internationally known TV star who has appeared as

one of the stars on the "Jersey Shore", and he has made appearances on shows such as "Dancing

with the Stars", "The Tonight Show" and many other nationally televised programs.

 5. MPS was established as the exclusive entity to license the name, image and

likeness of Sorrentino along with trademarks created and closely associated with Sorrentino.

 6. Defendant, is an American retailer that produces, markets, distributes, and sells

clothing at stores including: Abercrombie & Fitch, Abercrombie, Hollister Co., and Hilly Hicks.

## FACTUAL BACKGROUND

7.      Formed in 2009, MPS is a corporation which owns common law and federally registered trademarks for use of the marks "The Situation" and "GTL" (hereinafter referenced as "the Marks") in commerce. Copies of the trademark registrations are attached hereto as composite Exhibit "A".

8.      Since 2009 and continuing to present, MPS has marketed, distributed, and/or sold its goods and services bearing the Marks or similar variations thereof.  Plaintiffs have spent a large amount of time, energy and money to develop the goodwill associated with the Marks.

9.      While on the hit TV show the "Jersey Shore" and as in his everyday life, Sorrentino (along with other cast members) occasionally wore Abercrombie brand clothing.

10.     Starting August 2011, Defendant embarked on a grand, worldwide advertising campaign using Sorrentino's name, image and likeness to create brand awareness for its products by falsely claiming that Defendant had offered money to Sorrentino if he would stop wearing Defendant's goods.

11.     Defendant concocted this false advertising campaign using the name and image of Sorrentino, to promote and advertise Defendant's stores and its products. This advertising campaign claimed that Sorrentino was contrary to the "aspirational nature of the (Abercrombie) brand".

12.     As part of the campaign, on August 12, 2011, stories were written by the press stating that the advertising campaign was a "marketing ploy" designed "to further (Abercrombie's) name into the marketplace with one of the hottest brands on tv" which was intentionally and strategically released at the peak of the back to school season.  A true and

correct copy of the press release is attached hereto as Exhibit "B" and hereafter called the "Press Release"

13.     As part of the marketing ploy, Defendant contacted representatives of MTV (the network that distributes the "Jersey Shore") and allegedly offered to pay money to the Sorrentino if he would stop wearing Abercrombie brand clothing while on the show and at other times.

14.     That offer was never made to Sorrentino, nor was it ever conveyed to Sorrentino by a representative of Defendant.

15.     Defendant claimed in the press release that by wearing Abercrombie clothing, Sorrentino would be "causing significant damage" to the image of the Abercrombie brand.  In essence, Defendant's campaign was to make the ridiculous claim that Sorrentino was not worthy enough to wear Abercrombie clothing or that Sorrentino was so undesirable that wearing Abercrombie clothing would cause "damage" to Defendant.  The center piece of the advertising campaign was the huge success and popularity of Sorrentino.  The falsity of the advertising campaign is further demonstrated by Defendants actions to (at the same time that they are claiming that Sorrentino was damaging their image) attempt to associate themselves with Sorrentino by openly advertising specifically designed t-shirts using the Plaintiffs' Marks.

16.     Defendant intentionally marketed and distributed t-shirts containing an obvious reference to Plaintiffs' Marks on its website, www.abercrombie.com and in its stores, using shirts that stated "The Fitchuation" and "GTL...You Know The Deal".  These t-shirts were obviously intended to create a false association between Plaintiffs and the Defendant.  Attached hereto as Ex. "C" and "D" are representative examples of Defendant's products bearing facsimiles of the Plaintiff's Marks.  These shirts were very popular, and upon information and believe, Defendant sold its entire inventory of the shirts.

17.     This advertising and publicity campaign was intentionally designed to create consumer awareness of Defendant's goods, publicity and notoriety, which was worth millions of dollars to Defendant, through the exploitation of Sorrentino's name, image and likeness.

18.     Indeed, Defendant's advertising campaign was immensely successful; as it resulted in hundreds of newspapers and thousands of internet bloggers, publishing stories about Defendant's products and its brand.  Attached hereto as Ex. "E" is a representative sample of but one such story which was printed on the front page as the lead business story in The Miami Herald.

19.     As a result of Defendant's publicity campaign, Defendant has significantly profited off of the use of a false affiliation with Sorrentino and it has wrongly used Sorrentino's name, image and likeness for advertising purposes in violation of applicable law.

## COUNT I – TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

20.     Plaintiffs repeat and hereby incorporate by reference as though specifically pleaded herein, the allegations of paragraphs 1 through 19.

21.     The aforesaid acts of Defendant constitutes infringement of the Marks, in violation of Section 32(1) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1114(1).

22.     Defendant's use of the Marks is an infringement of Plaintiffs' registered trademarks for "The Situation" and "GTL" and is likely to cause confusion, mistake and deception of the public as to the identity and origin of Defendant's goods which are depicted on Ex. "C" and "D", causing damage and irreparable harm to Plaintiffs for which there is no adequate remedy at law.  Unless Defendant is restrained from continuing its wrongful acts, the damage to Plaintiffs will increase.

23.     Plaintiffs are informed and believe thereon that Defendant has unlawfully obtained profits from the sale of Defendant's goods described in Ex. "B" and "C". The amount of money earned by Defendant is unknown and can only be ascertained by an accounting of Defendant's files, books and records.

24.     An accounting is necessary to determine the true status of Defendant's accounts and the amounts owed to Plaintiffs.

25.     By reason of the foregoing acts, Defendant is liable to Plaintiffs for trademark infringement under 15 U.S.C. § 1114.

**COUNT II – UNFAIR COMPETITION AND
FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a)**

26.     Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 19.

27.     Defendant's use of the Marks to promote, market or sell its products and services, which are described in Ex. "B" and "C", are in direct competition with Plaintiffs' products and services and constitutes unfair competition and false designation of origin in violation of 15 U.S.C § 1125(a). Defendant's use of the Marks on these goods is likely to cause confusion, mistake, and deception among consumers who are likely to believe that these goods are associated with or endorsed by Plaintiffs.

28.     Defendant's wrongful acts have permitted or will permit it to capitalize on the success, goodwill and reputation of Plaintiffs and the strength of their Marks in promoting their own goods and services.

29.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have been and will be deprived of the value of their Marks and their related assets.

30.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have been damaged and such damage will continue unless the Court enjoins Defendant's acts. Plaintiffs have no adequate remedy at law for Defendant's continuing violation of their rights.

## COUNT III – UNFAIR COMPETITION UNDER FLORIDA STATUTES §§ 495.131, 151

31.     Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 19.

32.     Defendant's actions discussed herein constitute unfair competition within the meaning of sections 495.131 and 151, Florida Statutes.

33.     Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendant to cease this unfair competition, as well as disgorgement of all Defendant's profits associated with this unfair competition.

## COUNT IV – DECEPTIVE, FALSE AND MISLEADING ADVERTISNG – FLORIDA STATUTE § 495.151

34.     Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 19.

35.     The acts of Defendant described above constitute untrue and misleading advertising by Florida Statute 495, *et seq.*

36.     Defendant's use of the Marks as well as the name, image and likeness of Sorrentino in the same market is likely to create confusion, or to cause mistake or to deceive consumers as to the affiliation, connection or association of Plaintiffs' products and services, or deceive consumers as to the origin, sponsorship or approval by Plaintiffs of Defendant's products and services. Defendant also falsely used Sorrentino's name, image and likeness to create a multimillion dollar advertising campaign based upon the false statement that Defendant offered money to Sorrentino so he would not wear Defendant's goods.

37.     Defendant's wrongful acts have permitted or will permit it to capitalize on the success, goodwill and reputation of Plaintiffs and the strength of Plaintiffs' Marks in promoting their own goods and services.

38.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have been damaged and such damage will continue unless the Court enjoins Defendant's acts. Plaintiffs have no adequate remedy at law for Defendant's continuing violation of Plaintiffs' rights.

## COUNT V – TRADEMARK INFRINGEMENT – COMMON LAW

39.     Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 19.

40.     The acts of Defendant described above constitute trademark infringement of Plaintiffs' common law rights in its uses of the Marks.

41.     Defendant's improper use of the Marks is likely to cause confusion, mistake and deception of the public as to the identity and origin of Plaintiffs' goods and services and is likely to cause others to believe that there is a relationship between Defendant and Plaintiffs.

42.     Defendant's wrongful acts have permitted or will permit it to capitalize on the success, goodwill and reputation of Plaintiffs and the strength of Plaintiffs' Marks in promoting their own goods and services.

43.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have been and will be deprived of the value of their Marks and related assets.

44.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have been damaged and such damage will continue unless the Court enjoins Defendant's continuing violation of Plaintiffs' trademark rights.

## COUNT VI – COMMON LAW INJURY TO BUSINESS REPUTATION

45.     Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 19.

46.     Plaintiffs allege that Defendant's use of the infringing Marks injures and creates a likelihood of injury to Plaintiffs' business reputation because persons encountering Plaintiffs and their products and services will believe that Defendants are affiliated with or related to or have the approval of Plaintiffs and any adverse reaction by the public to Defendant and the quality of its products and the nature of its business will injure the business reputation to Plaintiffs and the goodwill that they enjoy in connection with their Marks.

## COUNT VII – VIOLATION OF F.S. § 540.08

47.     Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 19.

48.     The acts of Defendant to intentionally use Sorrentino's name, image and likeness in commerce for advertising purposes is a violation of § 540.08, Florida Statutes.

49.     At no time did Plaintiffs give permission to Defendant to use Sorrentino's name, image or likeness.

50.     The use by Defendant of Sorrentino's name, image and likeness was not part of a bona fide news report, nor did it have a legitimate public interest, but rather, was part of a calculated designed advertising and publicity campaign to use and exploit Sorrentino's name, image and likeness to promote Defendant's goods.

WHEREFORE, Plaintiffs pray:

1.     That pursuant to 15 U.S.C § 1116, Fla. Stat. §§ 465.141 and 540.08(2), Defendant and its agents, officers, employees, representatives, successors, assigns, attorneys, and all other

persons acting for, with, by, through or under authority from Defendant, and each of them, be preliminary and permanently enjoined from: (a) using the Marks, or any colorable imitation thereof; (b) using any trademark that imitates or is confusingly similar to or in anyways similar to Plaintiffs' trademark "The Situation" and "GTL", or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Plaintiffs' products and services or their connectedness to Defendant; (c) using the name, image and likeness of Sorrentino for commercial or advertising purposes, anywhere on the website or in commerce; and (d) using any name that is confusingly similar to Sorrentino's or his nickname "The Situation" for commercial or advertising purposes.

2.      That Defendant be required to file with the Court and serve on Plaintiffs within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

3.      That pursuant to 15 U.S.C. § 1117, Defendant be held liable for all damages suffered by Plaintiffs resulting from the acts alleged herein;

4.      That pursuant to 15 U.S.C. § 1117, Defendant be compelled to account to Plaintiffs for any and all profits derived by it from its illegal acts complained of herein;

5.      That Defendant be ordered pursuant to 15 U.S.C. § 1118 and Fla. Stat. § 495.141 to deliver up for destruction all clothing, containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material or the like in possession, custody or under the control of Defendant bearing a trademark found to infringe Plaintiffs' trademark rights, as well as all plates, matrices, and other means of making the same;

6.      That the Court declare this to be an exceptional case and award Plaintiffs their full costs and reasonable attorneys fees pursuant to 15 U.S.C. § 1117;

7.    That Defendant be ordered, pursuant to Fla. Stat. 495.141, to pay Plaintiff three times damages;

8.    That the Court grant Plaintiffs any other remedy to which they may be entitled as provided for in 15 U.S.C. § 1116 and 1117 or under state law;

9.    That Defendant be ordered, pursuant to Florida Statute § 540.08(2) to pay Plaintiffs a reasonable royalty in the amount of $1,000,000, plus exemplary and/or punitive damages in the amount of $3,000,000.

10.    For such and other further relief that the curt deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand Jury Trial of all issues.

## VERIFICATION

I, Marc Sorrentino, as Manager of MPS Entertainment, LLC, do hereby verify under penalties or perjury the truth of the allegations set forth herein.

Marc Sorrentino, Manager
MPS Entertainment, LLC


Dated this _0 7th_ day of November, 2011.          Respectfully submitted,



**WOLFE LAW MIAMI, P.A.**
*Attorneys for Plaintiffs*
175 SW 7th Street
Penthouse Suite 2410
Miami, FL 33130
Phone:  305-384-7370
Fax:  305-384-7371

By: _____

RICHARD C. WOLFE
Florida Bar No.:  355607
rwolfe@wolfelawmiami.com
DARREN A. HEITNER
Florida Bar No.: 85956
dheitner@wolfelawmiami.com

12