UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:11-cv-24110 - LENARD/Simonton

MPS Entertainment, LLC and
Michael P. Sorrentino,

                              Plaintiffs,

 v.

Abercrombie & Fitch Stores, Inc.,

                              Defendant.

_____/

**DEFENDANT'S MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT
<u>FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

# TABLE OF CONTENTS

**Page**

I. Factual Background .............................................................................................. 1

II. Argument ............................................................................................................... 2

 A. Standard for Fed. R. Civ. P. 12(b)(6) Motion To Dismiss For
  Failure To State A Claim Upon Which Relief Can Be Granted ............................ 2

 B. Plaintiffs Cannot State A Claim For Federal Trademark Infringement
  Under Section 32(1) Of The Lanham Act, Because They Do Not Own a
  Valid And Registered Trademark .......................................................................... 3

  1. Plaintiffs Do Not Own A Federal Trademark Registration For
   "The Situation" or "GTL" ............................................................................ 3

  2. Plaintiffs' Registration For The Stylized Upside-Down Mark
   SITUATION & Design Is Invalid ............................................................... 4

  3. Plaintiffs' Sole Registration For The Stylized Upside-Down Mark
   SITUATION & Design Is So Dissimilar To A&F's "Use" That
   There Is No Likelihood Of Confusion ........................................................ 7

 C. Plaintiffs Cannot Establish A Prima Facie Case For
  Unfair Competition Or False Designation Of Origin
  Under Section 43(a) Of The Lanham Act, 15 U.S.C. § 1125(a) .......................... 10

  1. Plaintiffs Do Not Own Any Common Law Rights In Any GTL Mark ... 10

  2. A&F's "Use" Was A Non-Actionable Parody ......................................... 12

  3. A&F's Use Was Ornamental, Non-Trademark Use ............................... 13

  4. A&F's Products Were Clearly Labeled With Its Own
   Famous Trademark "FITCH", Thereby Obviating
   Any Likelihood Of Confusion ................................................................... 13

 D. Plaintiffs Fail To Plead And Cannot Establish Required Elements Of Its
  Florida Unfair Competition Claim ....................................................................... 14

  1. Plaintiffs Lack A State Trademark Registration Required
   To State A Claim Under Fla. Stat. § 495.131 .......................................... 14

  2. Plaintiffs Fail To State A Claim Under Fla. Stat. § 495.151 ................... 15

   a. Plaintiffs Omit Required Elements Of A Dilution Claim ............ 15

   b. A&F's "Use" Is Not Actionable Under Florida Dilution Law .... 16

 E. Plaintiffs Fail To Plead A Cognizable Basis For A False Advertising Claim ..... 16

 F. Plaintiffs' Common Law Trademark Infringement Claim Fails Under The
  Same Analysis As Their Federal Trademark Claims ............................................ 18

 G. Plaintiffs Cannot Establish A Claim For
  Common Law Injury to Business Reputation ....................................................... 18

      H.     Plaintiffs Fail To State A Claim Under Fla. Stat. § 540.08 ................................. 19

           1.     A&F's Parody Is Protected By The First Amendment ........................... 19

           2.     A&F Did Not Use Sorrentino's Name To
                 Directly Promote A Product........................................................................ 19

      I.      Plaintiffs Are Not Entitled To The Requested Relief ......................................... 20

III.   Conclusion ...................................................................................................................... 20

## TABLE OF AUTHORITIES

<b>Page</b>

CASES

*Abner's Beef House Corp. v. Abner's Intern., Inc.*,
   227 So.2d 865 (Fla. 1969)........................................................................................14

*Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*,
   962 F.2d 316 (4th Cir. 1992) ...................................................................................12

*Armstrong Cork Co. v. World Carpets, Inc.*,
   597 F.2d 496 (5th Cir. 1979) .....................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937 (2009)....................................................................2, 3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........................ 1, BA_Cite_139 3, 8

*Berni v. International Gourmet Restaurants, Inc.*,
   838 F.2d 642 (2d Cir. 1988)......................................................................................3

*Betancur v. Florida*,
   2008 WL 506305 (N.D. Fla. 2008)...........................................................................9

*Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*,
   533 F.Supp. 75 (S.D. Fla. 1981) .............................................................................16

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) .................................................................................4

*Burnett v. Twentieth Century Fox Film Corp.*,
   491 F. Supp. 2d 962 (C.D. Cal. 2007) ...................................................................12

*Cardtoons, L.C. v. Major League Baseball Players Association*,
   95 F.3d 959 (10th Cir. 1996) .............................................................................13, 19

*Carnival Corp. v. SeaEscape Casino Cruises, Inc.*,
   74 F.Supp.2d 1261 (S.D.Fla. 1999) ................................................................14, 15

*Cleary Building Corp. v. David A. Dame, Inc.*,
   674 F.Supp.2d 1257 (D.Colo. 2009) ...........................................................13

*Cory Van Rijn, Inc. v. California Raisin Advisory Bd.*,
   697 F.Supp. 1136 (E.D. Cal. 1987) ...........................................................8

*Custom Mfg. and Engineering, Inc. v. Midway Services, Inc.*,
   508 F.3d 641 (11th Cir. 2007) ...................................................... passim

*Daly v. Viacom, Inc.*,
   238 F. Supp. 2d 1118 (N.D. Cal. 2002) ...........................................19

*Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*,
   369 F.3d 1197 (11th Cir. 2004) ...................................................8

*Exxon Corp. v. Oxxford Clothes, Inc.*,
   109 F.3d 1070 (5th Cir. 1997) ...................................................15

*Faulkner Press, LLC v. Class Notes, LLC*,
   756 F. Supp. 2d 1352 (N.D. Fla. 2010) ...........................................20

*Fila Sport, S.p.A. v. Diadora America, Inc.*,
   141 F.R.D. 74 (N.D. Ill. 1991) ...................................................3

*Finger Furniture Co., Inc. v. Mattress Firm, Inc.*,
   2005 WL 1606934 (S.D. Tex. 2005) ...........................................10

*Freedom Sav. and Loan Ass'n v. Way*,
   757 F.2d 1176 (11th Cir. 1985) ...................................................15, 19

*Frehling Enterprises, Inc. v. International Select Group, Inc.*,
   192 F.3d 1330 (11th Cir. 1999) ...................................................7, 8

*Griffin Indus. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ...................................................3, 7

*Haymaker Sports, Inc. v. Turian*,
   581 F.2d 257 (CCPA 1978) ...................................................5

*HBP, Inc. v. Am. Marine Holdings, Inc.*,
   290 F. Supp. 2d 1320 (M.D. Fla. 2003) ...........................................14

*Hensley Manufacturing, Inc. v. ProPride, Inc.*,
   579 F.3d 603 (6th Cir. 2009) ...................................................9

*Herbert Products, Inc. v. S & H Industries, Inc.*,
   1977 WL 23180 (E.D.N.Y. 1977)..................................................................................3

*HI Ltd. Partnership v. Winghouse of Florida, Inc.*,
   347 F.Supp.2d 1256 (M.D. Fla. 2004).......................................................................18

*Horsley v. Feldt*,
   304 F.3d 1125 (11th Cir. 2002) .................................................................................17

*Hosid Products, Inc. v. Masbach, Inc.*,
   108 F. Supp. 753 (N.D.N.Y. 1952) .............................................................................4

*In re Pro-Line Corp.*,
   28 USPQ2d 1141 (TTAB 1993) ................................................................................13

*Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*,
   326 F.3d 687 (6th Cir. 2003) ....................................................................................13

*interState Net Bank v. NetB@nk, Inc.*,
   348 F.Supp.2d 340 (D.N.J. 2004) ...........................................................................5, 6

*Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*,
   931 F.2d 1521 (11th Cir. 1991) .................................................................................18

*Jackson v. BellSouth Telecomms.*,
   372 F.3d 1250 (11th Cir. 2004) ...................................................................................2

*Jordache Enters. v. Hogg Wyld, Ltd.*,
   828 F.2d 1482 (10th Cir. 1987) ............................................................................12, 16

*La Dove Inc. v. Playtex Jhirmack, Inc.*,
   1991 WL 187473 (S.D. Fla. 1991) ........................................................................14, 18

*Marvel Enterprises, Inc. v. NCSoft Corp.*,
   2005 WL 878090 (C.D. Cal. 2005)..............................................................................9

*Murray v. Cable NBC*,
   86 F.3d 858 (9th Cir. 1996) ........................................................................................8

*PepsiCo, Inc. v. Grapette Co.*,
   416 F.2d 285 (8th Cir. 1969) ......................................................................................6

*Pyles v. United Air Lines*,
   79 F.3d 1046 (11th Cir. 1996) .....................................................................................2

*Robert Stigwood Group, Ltd. v. Hurwitz*,
   462 F.2d 910 (2d Cir. 1972)......................................................................................20

*Schutt Mfg. Co. v. Riddell, Inc.*,
   673 F.2d 202 (7th Cir. 1982) ...............................................................................20

*Sinaltrainal v. Coca-Cola Co.*,
   578 F.3d 1252 (11th Cir. 2009) ...........................................................................2, 3

*Snow v. DirecTV, Inc.*
   450 F.3d 1314 (11th Cir. 2006) ...............................................................................2

*Solis-Ramirez ex. rel. Solis v. United States Dep't of Justice*,
   758 F.2d 1426 (11th Cir. 1985) ...............................................................................7

*Sugar Busters LLC v. Brennan*,
   177 F.3d 258 (5th Cir. 1999) ...............................................................................5, 6

*Sweet v. City of Chicago*,
   953 F.Supp. 225 (N.D. Ill. 1996) .............................................................................9

*Tally-Ho, Inc. v. Coast Community College Dist.*,
   889 F.2d 1018 (11th Cir. 1989) .........................................................................14, 18

*Tana v. Dantanna's,*
   611 F.3d 767 (11th Cir. 2010) .............................................................................3, 9

*Tiger Direct, Inc. v. Apple Computer, Inc.*,
   2005 WL 1458046 (S.D. Fla. 2005) ........................................................................14

*Toho Co. v. Sears, Roebuck & Co.*,
   645 F.2d 788 (9th Cir. 1981) .............................................................................9, 12

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*
   221 F. Supp. 2d 410 (S.D.N.Y. 2002) .....................................................................12

*Trump Plaza of Palm Beaches Condominium Ass'n, Inc. v. Rosenthal*,
   2009 WL 1812743 (S.D. Fla. 2009) ........................................................................15

*Tyne v. Time Warner Entertainment Co.*,
   901 S.2d 802 (2005)........................................................................................19, 20

*Universal City Studios, Inc. v. Casey & Casey, Inc.*,
   622 F.Supp. 201 (S.D. Fla. 1985) ...........................................................................12

*Valentine v. C.B.S., Inc.*,
   698 F.2d 430, 433 (11th Cir. 1983). .......................................................................20

*Welding Services, Inc. v. Forman*,
   509 F.3d 1351 (11th Cir. 2007) ...............................................................................8

*Whitney Information Network, Inc. v. Xcentric Ventures, LLC*,
2005 WL 1677256 (M.D. Fla. 2005) ...................................................................................3

*Winter v. DC Comics*,
30 Cal. 4th 881 (Cal. 2003) ...........................................................................................19

*Z Productions, Inc. v. SNR Productions, Inc.*,
2011 WL 3754693 (M.D.Fla. 2011) ................................................................................15

**STATUTES**

15 U.S.C. § 1052 ...........................................................................................................10

15 U.S.C. § 1060(a)(1) ....................................................................................................5

15 U.S.C. § 1114.................................................................................................3, 4, 5, 8, 10

15 U.S.C. § 1125(a) ..........................................................................................10, 11, 18

Fla. Stat. § 495.011(9) ...................................................................................................14

Fla. Stat. § 495.131 ...................................................................................................14, 15

Fla. Stat. § 495.141 .......................................................................................................20

Fla. Stat. § 495.151 ...........................................................................1, 14, 15, 16, 18

Fla. Stat. § 540.08 .....................................................................................................19, 20

**RULES**

Fed. R. Civ. P. 10(c). .......................................................................................................7

Fed. R. Civ. P. 12(b)(6) .......................................................................................... passim

Fed. R. Evid. 201 .............................................................................................................4

**OTHER AUTHORITIES**

5A Fed. Prac. & Proc. Civ. § 1327 (3d ed. 2011) ........................................................17

3-11 *Gilson on Trademarks* § 11.03 (2010) .................................................................4

*McCarthy on Trademarks and Unfair Competition* § 3.3 .....................................10, 13

*McCarthy on Trademarks and Unfair Competition* § 7:20 ........................................10

*McCarthy on Trademarks and Unfair Competition* § 18:17 ........................................5

*McCarthy on Trademarks and Unfair Competition* § 18:27 ...........................................................6

*McCarthy on Trademarks and Unfair Competition* § 24:41 ...........................................................8

*McCarthy on Trademarks and Unfair Competition* § 24:90 .........................................................16

*McCarthy on Trademarks and Unfair Competition* § 24:117 .......................................................15

*McCarthy on Trademarks and Unfair Competition* § 31:155 ................................................12, 13

*McCarthy on Trademarks and Unfair Competition* §32:3 ............................................................3

*McCarthy on Trademarks and Unfair Competition* § 32:121:25 .................................................10

*Moore's Federal Practice* § 12.34[4][a]......................................................................................2

Trademark Manual of Examining Procedure § 1202.03(a) ...........................................................13

Defendant Abercrombie & Fitch Stores, Inc. ("A&F") moves to dismiss Plaintiffs MPS Entertainment, LLC's ("MPS"), and Michael P. Sorrentino's ("Sorrentino") (collectively "Plaintiffs") complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the Plaintiffs have failed to state a plausible legal and factual basis for each of their claims.

As a matter of law, a court may dismiss an action pursuant to Rule 12(b)(6) if a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Here, Plaintiffs have failed to allege, and cannot allege, a plausible legal and factual basis for each of their claims.  Plaintiffs cannot establish a federal trademark infringement claim because they do not own a valid, federal trademark registration for either of their asserted trademarks.  Similarly, Plaintiffs cannot establish a Florida unfair competition claim because they do not own a valid, state trademark registration and have failed to plead the required elements of Fla. Stat. § 495.151.  Further, Plaintiffs' federal unfair competition and common law trademark claims also fail as Plaintiffs do not own any valid, recognizable common law rights in any "GTL" mark.  Additionally, A&F's use of "G.T.L." and "The Fitchuation" was not a trademark use, and any likelihood of confusion was obviated by A&F's use of its own famous "FITCH" trademark on its shirts.  The t-shirts about which the Plaintiffs complain constitute a permissible parody for which there is no likelihood of confusion and, accordingly, A&F's parody t-shirts are not actionable under the Lanham Act, common law or Florida law pursuant to any trademark or right-of-publicity legal theory.  Finally, Plaintiffs have also failed to plead a plausible legal basis to claim false advertising or common law injury to business reputation.  Because these deficiencies cannot be corrected, the dismissal should be with prejudice.

## I.      Factual Background

Sorrentino is a castmate appearing on MTV's reality television show "Jersey Shore." (ECF No. 1, ¶¶ 4,13.)  Sorrentino uses the nickname "The Situation" on the Jersey Shore show, and Sorrentino and other castmates use the abbreviation "GTL" to refer to their common activities of going to the gym, tanning and doing laundry.  (ECF. No. 1-5.)  A&F periodically produces and sells parody t-shirts as part of its humor line of t-shirts that contain references to popular culture.  A&F neither claims trademark rights in any of the parodies used on these t-shirts, nor does it use parodies as trademarks (i.e., indicators of source) on its A&F t-shirts.  As part of its offer of parody t-shirts A&F placed an order in January 2010 for two t-shirts featuring phrases that parodied the "Jersey Shore".  (*See* ECF. Nos. 1-3, 1-4.)  Plaintiffs were aware of, but

did not object to, the parody t-shirts until almost a year later.  Subsequently, on August 11, 2011, an episode of Jersey Shore aired in which Sorrentino wore green Abercrombie sweat pants bearing it's A&F logo throughout most of the episode.  (ECF No. 1-5, p. 3.)  Based on A&F's concern that the prominent display of its A&F logo would be viewed as an endorsement by A&F of the raucous behavior on the show, A&F sent a letter to MTV in which it requested that its marks be pixilated out of future episodes, and offered Sorrentino and other castmates money to stop wearing its products.  (ECF No. 1-2, p. 2; ECF No. 1-5, p.3; Ex. 1.)

## II.    Argument

### A.    Standard for Fed. R. Civ. P. 12(b)(6) Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted

Dismissal of a claim is proper "if the complaint lacks an allegation regarding an element necessary to obtain relief or if the plaintiff fails properly to allege standing to sue." *Moore's Federal Practice* § 12.34[4][a]; *see also Pyles v. United Air Lines*, 79 F.3d 1046, 1049 (11th Cir. 1996).  A dismissal under Rule 12(b)(6) can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal claim.  *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) ("at a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory").  On a 12(b)(6) motion, the Court only "accepts all *well-pled* facts alleged by [*sic*] in the complaint as true."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (emphasis added).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009).  In order to state a plausible claim, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.*  In this respect, "[a] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Conclusory allegations and unwarranted deductions of fact

are not admitted as true." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206, 1210 (11th Cir. 2007) (reversing district court's denial of defendants' 12(b)(6) motion where facts in plaintiff's own complaint contradicted its conclusory allegations).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.  *Iqbal*, 129 S. Ct. at 1949; *see also Sinaltrainal*, 578 F.3d at 1270 (dismissing complaint consisting of "vague and conclusory allegations" which did not "raise a right to relief above the speculative level").

> **B.     Plaintiffs Cannot State A Claim For Federal Trademark Infringement Under Section 32(1) Of The Lanham Act, Because They Do Not Own a Valid And Registered Trademark**
>
> > **1.     Plaintiffs Do Not Own A Federal Trademark Registration For "The Situation" or "GTL"**

Section 32(1) of the Federal Trademark Act, 15 U.S.C. § 1114(1), establishes a cause of action for infringement solely of a federally registered mark, in providing that "[a]ny person who shall, without the consent of the *registrant* use in commerce any reproduction, counterfeit, copy or colorable imitation of a *registered mark . . .* shall be liable in a civil action by the registrant…." (Emphasis added).  *See 6 McCarthy on Trademarks and Unfair Competition* §32:3 (4th ed. 2010) ("it is clear on the face of the statute that plaintiff must be the "registrant" of an already issued and outstanding registration" to bring a § 32 infringement claim; *Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010) ("Section 32(a) creates a cause of action for the infringement of a *registered* mark") (emphasis added); *Berni v. International Gourmet Restaurants, Inc.*, 838 F.2d 642, 645-646 (2d Cir. 1988) ("Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), grants standing to assert a claim for trademark infringement solely to the 'registrant'"); *Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 2005 WL 1677256, *3 (M.D. Fla. 2005) ("An action cannot be raised under 15 U.S.C. § 1114 for an unregistered trademark"); *Fila Sport, S.p.A. v. Diadora America, Inc.*, 141 F.R.D. 74, 80 (N.D. Ill. 1991) (granting motion to dismiss trademark infringement claim in absence of federal trademark registration); *Herbert Products, Inc. v. S & H Industries, Inc.*, 1977 WL 23180, *3 (E.D.N.Y. 1977) ("registration is a procedural prerequisite to suit under 15 USC § 1114(1)").

Plaintiffs allege in paragraph 7 of the Complaint that MPS "owns federally registered trademarks for use of the marks 'The Situation' and 'GTL'" and that "[c]opies of the trademark registrations are attached hereto as composite Exhibit 'A'," but, Ex. A does not contain copies of any trademark registrations.  Rather, Ex. A merely contains print-outs from the U.S. Patent & Trademark Office's ("USPTO") TESS database which do not list the current status of Plaintiffs'

alleged marks.  In contrast, the records for Plaintiffs' alleged trademarks in the USPTO public TARR database (which contains the status of every pending application and registration filed with the USPTO), available on the USPTO website at http://tarr.uspto.gov/, shows that MPS has merely applied to register "The Situation" and "GTL" as trademarks, that these applications have not been granted, and thus MPS does not own any federal trademark registrations for these alleged marks.  (*See* Ex. 2, pp. 32-33, 54-55.)[1]  MPS' mere applications cannot support a claim for infringement under § 32(1) because they have not yet matured (and may never mature) into federal trademark registrations.[2]  *See* 3-11 *Gilson on Trademarks* § 11.03 (2010) ("The mere pendency of an application for federal trademark registration…is not sufficient for jurisdiction under Section 32"); *Hosid Products, Inc. v. Masbach, Inc.*, 108 F. Supp. 753, 755 (N.D.N.Y. 1952) (pleading federal applications insufficient).

> **2.    Plaintiffs' Registration For The Stylized Upside-Down Mark SITUATION & Design Is Invalid**

The only federal registration that Plaintiffs assert in Ex. A is Registration No. 3,635,203 for the stylized mark SITUATION and Design:

| Assigned Reg. No. 3,635,203 | Plaintiffs' Claimed Marks |
|---|---|
| **SITUATION** (shown inverted) | SITUATION NATION<br>**The** *Situation* |
| ECF No. 1-1, p. 26 | ECF No. 1-1, pp. 6, 20 and 22. |

which MPS acquired from a third party through an invalid assignment in gross, and MPS therefore cannot rely on this registration to assert a federal trademark infringement claim.[3]

---

[1] A&F attaches as Ex. 2 the corresponding TARR print-outs containing status information for each of the alleged marks asserted in Plaintiffs' Ex. A (ECF No. 1-1).  A&F respectfully requests that the Court take judicial notice of the information in these public records (as well as other USPTO public records referenced herein) that are available to the public on the USPTO's website.  Under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." *Bryant v. Avado Brands*, Inc., 187 F.3d 1271, 1277 (11th Cir. 1999) (filings at the Securities and Exchange Commission could be judicially noticed as "public records" as "[w]ere courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure").

[2] MPS's application for "The Situation" in connection with clothing is currently facing an office action from the USPTO preventing its registration.  (*See* Ex. 2, p. 32.)

[3] As shown in Ex. A (ECF No. 1-1, p. 27) the original registrant of the stylized mark SITUATION & Design was Yak Shoes which subsequently assigned the registration to MPS.

*Sugar Busters LLC v. Brennan*, 177 F.3d 258, 266 (5th Cir. 1999) (concluding that plaintiff's service mark was invalidly assigned and therefore "its trademark infringement claim under 15 U.S.C. §1114 cannot succeed on the merits"); *McCarthy* § 18:17 ("If an assignment is invalid as being in gross, the purported 'assignee' acquires no title in the mark, and hence has no standing to sue a third party for infringement."). The Lanham Act allows registrants to assign their trademark registrations only where such transfer includes the "goodwill" associated with the trademark. 15 U.S.C. § 1060(a)(1). "A sale of trademark rights apart from good will symbolized by the trademark is known as an 'assignment in gross'" and such an assignment "is invalid, and operates to pass no rights to the purported assignee." *McCarthy* § 18:17; *see also Sugar Busters*, 177 F.3d at 265. A mere formulaic recitation in an assignment that "goodwill" has been transferred is insufficient unless there has in fact been some transfer of the business associated with the trademark. *Haymaker Sports, Inc. v. Turian*, 581 F.2d 257, 261 (CCPA 1978) ("Notwithstanding that the agreement recited pro forma that goodwill was transferred along with the mark, Block and Moran never played an active role in the business of Avon, never used the mark themselves, and never acquired any tangible assets or goodwill of Avon. Therefore, we conclude that, as a matter of substance, the assignment was invalid as an assignment in gross, rendering the latter assignment to Turian also invalid."); *interState Net Bank v. NetB@nk, Inc.*, 348 F.Supp.2d 340, 349 (D.N.J. 2004) ("The mere fact that an agreement purports to assign goodwill along with the trademark is insufficient.").

MPS' assignment agreement with Yak Shoes, Inc., the original owner of Registration No. 3,635,203, asserts that the "goodwill" was transferred, but Plaintiffs plead no facts, nor do any exist, that any business of Yak Shoes was transferred or that Plaintiffs have since used the stylized mark SITUATION & Design. [4] The registration for the stylized mark SITUATION & Design covers "retail store services featuring men's, women's and children's apparel, footwear and accessories." Plaintiffs plead no facts that they were offering "retail store services featuring men's, women's and children's apparel, footwear and accessories" at the time MPS acquired the registration for the stylized mark SITUATION & Design, or that they have since offered retail store services under this mark. Plaintiffs do not allege that they own any physical retail stores

---

[4] Plaintiff MPS' assignment agreement was filed with the USPTO, is in the USPTO public records at http://assignments.uspto.gov/assignments/assignment-tm-4589-0440.pdf and is attached hereto as Ex. 3.

through which they offer services under the stylized mark SITUATION & Design, nor do Plaintiffs use the stylized mark SITUATION & Design on their website at www.officialsituation.com. Plaintiffs merely allege that MPS has "marketed, distributed, and/or sold its goods and services bearing the Marks" defined as the unstylized word marks "The Situation" and "GTL." (ECF No. 1, ¶ 8.)

A change in the type of goods offered under an assigned registration, or in the mark that was assigned, demonstrates that goodwill has not been transferred and that the trademark was merely obtained to gain an advantage, and therefore the assignment is invalid. *See McCarthy* § 18:27 ("Under the general rule, a substantial change in the nature or quality of goods sold under a mark, whether there is an assignment or not, may so change the nature of good will symbolized by the mark that the mark becomes fraudulent and original rights are lost"); *interState Net Bank*, 348 F.Supp.2d at 351 (finding that "[t]he assignment, therefore, was to obtain and use the NETBANK trademark without obtaining and using any of the goodwill accompanying that mark" where assignee changed the format of the mark after assignment). In *Sugar Busters LLC v. Brennan*, the Court found that the plaintiff's sale of some books bearing the assigned mark over the Internet was not sufficiently similar to the assigned registration covering "retail store services" and therefore the assignment was invalid. 177 F.3d at 266 ("[W]e are unconvinced by plaintiff's argument that, by stating on the cover of its diet book that it may 'help treat diabetes and other diseases' and then selling some of those books on the Internet, plaintiff provides a service substantially similar to a retail store that provides diabetic supplies"); *see also PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285, 290 (8th Cir. 1969) ("The evidence is clear that Grapette did not intend to adopt or exploit any 'goodwill' from the name 'Peppy' and Fox's long association and use of it with a cola syrup. When one considers that Grapette did not acquire any of the assets of Fox, did not acquire any formula or process by which the Fox syrup was made, and then changed the type of beverage altogether, the assignment on its face must be considered void.") (citations omitted).

Here, as shown in Plaintiffs' Ex. A,[5] the USPTO describes the stylized SITUATION & Design mark to "consist of the upside down stylized wording 'SITUATION' with a line above

---

[5] Information in exhibits that Plaintiffs attached to the complaint is treated as part of the complaint and can serve as a basis for dismissal. *Griffin Indus.*, 496 F.3d at 1206 ("Conclusory

the upside down wording" and the USPTO also assigned design search codes for "[r]ectangles that are completely or partially shaded" and "[l]etters or words underlined and/or overlined by one or more strokes or lines", which is substantially different than any of Plaintiffs' claimed alleged marks applied for to cover clothing as depicted at page 4 above.  As Plaintiffs have completely changed the format of the assigned mark, and have not used the assigned design mark in connection with the services for which it is registered, the assignment of Reg. No. 3,635,203 is an invalid assignment in gross and, therefore, Plaintiffs acquired no title in the mark and have no standing to sue A&F for infringement based on this registration.

### 3.   Plaintiffs' Sole Registration For The Stylized Upside-Down Mark SITUATION & Design Is So Dissimilar To A&F's "Use" That There Is No Likelihood Of Confusion

Even if the invalid assignment-in-gross were deemed a valid acquisition of the registration for the stylized mark SITUATION & Design, this mark is so dissimilar to A&F's "use" as alleged by Plaintiffs that it fails to state a claim for federal trademark infringement.

"[T]he touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion."  *Custom Mfg. and Engineering, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).  The Eleventh Circuit uses the seven factors set forth in *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) to analyze likelihood of confusion.[6]  "Because the bottom line is the likelihood of consumer confusion, application of the *Frehling* factors entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.'" *Custom Mfg.*, 508 F.3d at 649.  The Eleventh Circuit instructs that "[t]he appropriate weight to be given to each of these

---

(continued…)

allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."); *Solis-Ramirez ex. rel. Solis v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) ("Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion").

[6] These factors are: (1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets (trade channels) and customers, (5) similarity of advertising media, (6) defendant's intent and (7) actual confusion.

factors varies with the circumstances of the case." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1207 (11th Cir. 2004); *see also Murray v. Cable NBC*, 86 F.3d 858, 861 (9th Cir. 1996) (affirming 12(b)(6) dismissal of a trademark infringement claim on a small sub-set of likelihood of confusion factors).

The similarity of marks has always been considered a critical question in the likelihood of confusion analysis. *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 502-05 (5th Cir. 1979) (holding that district court's finding that the marks were "substantially similar" was clearly erroneous and without "critical finding of trademark similarity" finding of likelihood of confusion could not stand). "Overwhelming visual dissimilarity can defeat an infringement claim, even where the other six factors all weigh in favor of the plaintiff." *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007). In other words, where alleged "conflicting marks are overwhelmingly dissimilar, a summary dismissal of the infringement claim is proper even if all of the other factors tip in favor of the plaintiff." *McCarthy* § 24:41; *Dippin' Dots*, 369 F.3d at 1209 ("two logos are so different that no reasonable jury could find that even a hurried 8-18 year old impulse shopper could confuse them"); *Cory Van Rijn, Inc. v. California Raisin Advisory Bd.*, 697 F.Supp. 1136, 1145 (E.D. Cal. 1987) (dismissing trademark infringement claim finding that "the absence of substantial similarity leaves little basis for asserting a likelihood of confusion"). Plaintiffs' sole federal registration [the upside-down stylized mark SITUATION & Design] is so fundamentally different from A&F's use [as alleged in Exs. C and D to the Complaint] Plaintiffs cannot meet this critical element of a §32(1) infringement claim.

"Recovery under the Lanham Act requires, at a minimum, that confusion, mistake, or deception be likely, not merely possible." *Custom Mfg.*, 508 F.3d at 651 (citation omitted). Even before *Twombly* and its progeny many courts have dismissed trademark infringement claims under Rule 12(b)(6) where the allegations did not support any plausible finding of likelihood of confusion. *See Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir. 1981) (affirming Rule 12(b)(6) dismissal where facts alleged, including dissimilarity of the marks, would not "permit a conclusion that consumers are likely to be confused as to source or sponsorship"); *Hensley Manufacturing, Inc. v. ProPride, Inc.*, 579 F.3d 603, (6th Cir. 2009) (affirming 12(b)(6) dismissal where complaint did not allege facts sufficient to show likelihood of confusion as to the source of the products and defendant's mark was "not even remotely similar" to plaintiff's asserted mark); *Sweet v. City of Chicago*, 953 F.Supp. 225, 231-232 (N.D. Ill. 1996) (granting 12(b)(6) motion to dismiss trademark infringement claim with prejudice where "complaint

merely makes the conclusory assertion that confusion is likely and sets forth no facts that would permit a conclusion that patrons of the Art Fair are likely to be confused as to the origin or sponsorship of the Art Fair"); *Marvel Enterprises, Inc. v. NCSoft Corp.*, 2005 WL 878090, *4 (C.D. Cal. 2005) (granting 12(b)(6) motion where plaintiff did not own a registration for the image of the character and dissimilarity of the word marks was "self-evident"); *Betancur v. Florida*, 2008 WL 506305, (N.D. Fla. 2008) (a trademark infringement claim "requires a showing that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services").  Here, confusion is not likely or even possible, because of the self-evident dissimilarity in both the wording and stylization between Plaintiffs only asserted federal registration for the stylized mark SITUATION & Design and A&F's use of parodic slogans on two of its humor t-shirts as depicted below:

| Plaintiffs' Asserted Federal Registration | A&F's Use Alleged by Plaintiffs | |
|---|---|---|
|  ECF No. 1-1, p. 26. | | |
| | ECF No. 1, ¶ 22; ECF Nos. 1-3 and 1-4. | |

Beyond the striking *dis*similarity, Plaintiffs also fail to plead any allegations relating to actual confusion, a key factor in the Eleventh Circuit.  *Custom Mfg.*, 508 F.3d at 650 (Eleventh Circuit has "consistently held" that "actual confusion" is one of "the most weighty of considerations"); *Tana*, 611 F.3d at 779 ("actual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion").  Plaintiffs also do not plead any allegations concerning the following likelihood of confusion factors: type of mark, similarity of the products, similarity of the parties' retail outlets, and similarity of advertising media.  The overwhelming dissimilarity of the marks in itself dooms Plaintiffs' § 1114 claim, and the absence of other well-pled facts sufficient to overcome that dissimilarity supports dismissal.  "A trademark infringement suit may be dismissed on a 12(b)(6) motion if the allegations are totally without a legal foundation that could lead to liability."  *McCarthy* § 32:121:25.  Accordingly, Plaintiffs' federal infringement claim (Count I) must be dismissed with prejudice.

**C.**    **Plaintiffs Cannot Establish A Prima Facie Case For Unfair Competition Or False Designation Of Origin Under Section 43(a) Of the Lanham Act**

"To establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Custom Mfg.*, 508 F.3d at 647 (citation omitted).   Plaintiffs' Count II should be dismissed because it cannot establish any enforceable trademark rights in the alleged GTL mark, and further cannot establish that either of A&F's parodies was likely to cause any confusion with any of Plaintiffs' asserted unregistered trademarks.

### 1.        Plaintiffs Do Not Own Any Common Law Rights In Any GTL Mark

In order for a mark to be protectable, it must be capable of distinguishing the owner's goods from those of others. 15 U.S.C. § 1052.   "[T]o create trademark or trade dress rights, a designation must be proven to perform the job of identification; to identify *one source* and distinguish it from other sources.  If it does not do this, then it is not protectable as a trademark, service mark, trade dress or any similar exclusive right." *McCarthy* § 3.3 (emphasis added). "Slogans often appear in such a context that they do not identify and distinguish the source of goods or services. In such cases, they are neither protectable nor registrable as trademarks." *McCarthy* § 7:20.  Where a plaintiff cannot establish its alleged mark identifies a single source, its claim will be dismissed for failure to state a claim.  *See Finger Furniture Co., Inc. v. Mattress Firm, Inc.*, 2005 WL 1606934, *4 (S.D. Tex. 2005) (granting 12(b)(6) motion to dismiss trademark infringement and other Lanham Act claims where the Court found it "difficult to characterize" plaintiff as the "source" of the alleged mark where other third parties used the phrase).

*As plead by Plaintiffs*, the alleged mark "G.T.L." is merely an acronym for "Gym Tan Laundry." (ECF No. 1, ¶ 3.)  All the castmates on the MTV television show Jersey Shore[7] use the alleged mark "GTL" as an abbreviation of the slogan "Gym, Tanning, Laundry" to describe their common activities on the show, and "GTL" is not used or recognized by the characters on the show or by consumers to identify a single source of goods or services.  Indeed, the public records at the USPTO show that Viacom International, Inc. (the parent company of MTV), owns a trademark registration for "GYM TANNING LAUNDRY" (Reg. No. 4,014,420) as well as a

---

[7] Plaintiffs acknowledge that Plaintiff Sorrentino appeared on the show the "Jersey Shore"  (ECF No. 1, ¶¶ 4, 9),  and that the Jersey Shore is distributed and produced by MTV.  (ECF No. 1, ¶ 13; 1-2; 1-5, p. 2.)

pending application (App. No. 77/960,143),[8] and that MPS' trademark application for GYM TAN LAUNDRY (App. No. 85/185,431) has been suspended by the USPTO due to Viacom's (MTV) prior applications.[9]  Further, MTV is offering t-shirts bearing "GTL" on its website at its shop for its television show Jersey Shore, http://shop.mtv.com/category/47931979241/1/Jersey-Shore.htm, and a search for "GTL" on MTV's website reveals numerous uses of GTL by MTV, and by other castmates, http://www.mtv.com/search/?q=gtl.  Based on both MTV's and other Jersey Shore castmates' use of "GTL", Plaintiffs cannot establish that they are the single source of goods being offered under the alleged mark "GTL", and their unfair competition and false designation of origin claim under § 1125(a) must fail.  Additionally, Plaintiffs' Ex. A (ECF No. 1-1, p. 38) shows that they did not even file an application claiming any trademark rights in "GTL" until February 5, 2010, and the current USPTO status report shows that Plaintiffs have yet to file any proof of use of the alleged "GTL" mark (Ex. 2, p. 54), despite Plaintiffs' allegation in ¶ 8 that MPS has been marketing, distributing or selling goods bearing "the Marks."  A&F ordered its parody t-shirts in January 2010, before Plaintiffs had even asserted any intent to use "GTL" in the future as a trademark.

**2.    A&F's "Use" Was A Non-Actionable Parody**

It is well established that, "[i]f the difference in wording or appearance of the designation together with the context and overall setting is such as to convey to the ordinary viewer that this is a joke, not the real thing, then confusion as to source, sponsorship, affiliation or connection is unlikely." *McCarthy* § 31:155.  The Eleventh Circuit and other courts recognize that parody is not actionable as trademark infringement or unfair competition.  *Universal City Studios, Inc. v. Casey & Casey, Inc.*, 622 F.Supp. 201, 204-05 (S.D. Fla. 1985), aff'd without op., 792 F.2d 1125 (11th Cir. 1986) (affirming denial of preliminary injunction against MIAMI MICE t-shirts); *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 319, 321 (4th Cir. 1992) (t-shirt

---

[8] Print-outs from the USPTO TARR public database of Viacom's registration and application for GYM TANNING LAUNDRY are attached hereto as Ex. 4.

[9] A print-out from the USPTO TARR database for Plaintiff MPS' trademark App. No. 85/185,431 for GYM TAN LAUNDRY showing that the application is suspended is attached as Ex. 5.  Additionally a copy of the Office Action refusing registration to MPS' application and the subsequent suspension letter is available from the USPTO public database at http://tdr.uspto.gov/search.action?sn=85185431# and is also included in Ex. 5.  Viacom's App. No. 77/960,149 cited in the USPTO's office action and suspension letter has since matured into Reg. No. 4,014,420.  (*See* Ex. 4 attached hereto.)

incorporating beer label design that intentionally imitated non-verbal portion of Budweiser label was a parody, noting that the "T-shirt design fits a conventional definition of trademark parody"); *Jordache Enters. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487,1489 (10th Cir. 1987) (in affirming no confusion between defendant's LARDASHE use and plaintiff's JORDACHE mark court noted "[a]n intent to parody is an intent *not* to confuse the public") (emphasis added); *Tommy Hilfiger Licensing, Inc. v. Nature Labs*, LLC, 221 F. Supp. 2d 410, 415 (S.D.N.Y. 2002) (granting summary judgment to defendant on its use of TOMMY HOLEDIGGER as not infringing TOMMY HILFIGER, "as the joke is clear enough to result in no confusion").

Dismissal of trademark claims under Rule 12(b)(6) is proper where the alleged infringing conduct is merely a parody, and therefore likelihood of confusion is not possible. *See Toho Co.*, 645 F.2d at 791 (affirming 12(b)(6) dismissal of claims based on GODZILLA trademark against use of BAGZILLA and the phrase "monstrously strong", noting "the contention that Sears intends to confuse consumers is implausible: Sears means only to make a pun"); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962 (C.D. Cal. 2007) (granting 12(b)(6) motion to dismiss trademark infringement claim based on a parodic use stating "[w]here a defendant uses a variation on plaintiff's mark merely to make a clever turn of phrase…then confusion as to source, sponsorship, affiliation or connection is unlikely" and noting that "[p]ublic figures, such as Ms. Burnett, are frequent targets of parodies"); *Cleary Building Corp. v. David A. Dame, Inc*., 674 F.Supp.2d 1257, 1268 (D.Colo. 2009) (granting 12(b)(6) dismissal of trademark claims and noting that "the Lanham Act is intended to protect the ability of consumers to distinguish among competing producers, not to prevent all unauthorized uses… trademark rights cannot be used "to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view") (citations omitted).

A&F's t-shirt bearing the phrase "The Fitchuation" was a pun or turn of phrase, parodying Sorrentino's nickname for himself as "The Situation". *See Cardtoons, L.C. v. Major League Baseball Players Association*, 95 F.3d 959, 969 (10th Cir. 1996) (parodic baseball cards were "no less protected because they provide humorous rather than serious commentary"). As Plaintiffs plead, Sorrentino has appeared on several nationally televised programs (ECF No. 1, ¶ 4), and as such is a public figure, subject to being parodied by virtue of his presence in the public eye. Additionally, the t-shirt bearing the phrase "G.T.L. (You Know The Deal) Fitch", was poking fun at the Jersey Shore castmates self-proclaimed habit of doing the "GTL", i.e. "gym, tanning, laundry." "[T]he requirement of trademark law is that a likely confusion of

source, sponsorship or affiliation must be proven, which is not the same thing as a 'right' not to be made fun of." *McCarthy* § 31:155. Neither parodic use can establish a likelihood of confusion as to source. Plaintiffs Count II should be dismissed.

### 3.   A&F's Use Was Ornamental, Non-Trademark Use

To be actionable, A&F must use the alleged trademark as a trademark. *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003) ("If defendants are only using [plaintiff's] trademark in a "non-trademark" way - that is, in a way that does not identify the source of a product - then trademark infringement and false designation of origin laws do not apply"); *see McCarthy* § 3.3. Here, however, A&F has not used the acronym "G.T.L." or the parody "The Fitchuation" as a trademark, but merely in an ornamental fashion. "[U]nless the accused use is a trademark use, likelihood of confusion is highly unlikely." *McCarthy* § 3.3. Where an alleged mark is used in large print which fills a large portion of the shirt or other article of clothing, such use is deemed merely ornamental. *See In re Pro-Line Corp.*, 28 USPQ2d 1141, 1142 (TTAB 1993); Trademark Manual of Examining Procedure § 1202.03(a). A&F's use of these phrases in large print across a large portion of the shirts is not trademark use but merely ornamental, and thus further avoids any likelihood of confusion.

### 4.   A&F's Products Were Clearly Labeled With Its Own Famous Trademark "FITCH", Thereby Eliminating Any Likelihood Of Confusion

Each of A&F's t-shirts challenged by Plaintiffs clearly bears A&F's famous house mark "FITCH", and therefore clearly identifies the source of the product, and eliminates any likelihood of confusion. *See Custom Mfg.*, 508 F.3d at 652 n.10 (use of house brand significant in reducing likelihood that consumers would be confused as to source ); *Tiger Direct, Inc. v. Apple Computer, Inc.*, 2005 WL 1458046, *16 (S.D. Fla. 2005) (J. Lenard) (finding the parties marks "distinctly different" where defendant Apple's use occurred in an "Apple-branded environment"); *La Dove Inc. v. Playtex Jhirmack, Inc.*, 1991 WL 187473, *4-*5 (S.D. Fla. 1991) (noting the prominent presence of plaintiff's house mark in finding no similarity); *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F.Supp.2d 1261, 1268 (S.D.Fla. 1999) ("considering the marks as a whole leads the Court to conclude that they are not similar enough to create a likelihood of confusion. Especially persuasive is the fact that the 'Fun Ship' mark is used in conjunction with the 'Carnival' mark 95% of the time and that the SeaEscape slogan always features the 'SeaEscape' name prominently"); *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F.

Supp. 2d 1320, 1332-33 (M.D. Fla. 2003) (no confusion where defendant prominently used its mark).  Plaintiffs' Count II should be dismissed on this additional basis.

**D.  Plaintiffs Fail To Plead And Cannot Establish Required Elements Of Its Florida Unfair Competition Claim**

Plaintiffs' sole allegation in support of its statutory unfair competition claim under Florida law is that "Defendant's actions discussed herein constitute unfair competition within the meaning of section 495.131 and 151, Florida Statutes." Plaintiffs' conclusory allegation is insufficient to state a claim and, further, Plaintiffs cannot meet the required elements of either cited statute.

**1.  Plaintiffs Lack A State Trademark Registration Required To State A Claim Under Fla. Stat. § 495.131**

Fla. Stat. § 495.131 establishes a cause of action for state trademark infringement and limits claims to "registrants" for "a mark registered under this chapter," *i.e.* a mark registered under the Florida Registration and Protection of Trademarks Act ("Florida Trademark Act"), Fla. Stat. 495, *et seq.*  The Florida Trademark Act defines "registrant" as "the person to whom the registration of a mark under this chapter is issued and the legal representatives, successors, or assigns of such person."  Fla. Stat. § 495.011(9).  Therefore, in order to state a claim under Fla. Stat. § 495.131, a plaintiff must own and plead ownership of a Florida state trademark registration.  *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1024 (11th Cir. 1989) ("The Act permits *a registrant* to sue for infringement under…§ 495.131…and pursue remedies under…§ 495.141") (emphasis added); *Abner's Beef House Corp. v. Abner's Intern., Inc.*, 227 So.2d 865, 866 (Fla. 1969) ("F.S. Section 495.131, F.S.A., which provides infringement of a registered mark shall subject the infringer to the liability of a civil action by the owner of the mark and to the injunctive and damage remedies of F.S. Section 495.141").  Plaintiffs do not plead ownership of a Florida state trademark registration and, therefore, cannot state a claim under Fla. Stat. § 495.131.

**2.  Plaintiffs Fail To State A Claim Under Fla. Stat. § 495.151**

**a.  Plaintiffs Omit Required Elements Of A Dilution Claim**

Fla. Stat. § 495.151 establishes a cause of action for trademark dilution and requires that a plaintiff plead and prove the following elements in order to prevail: 1) the plaintiff's mark is famous; 2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; 3) the defendant's use was commercial and in commerce; and 4) the defendant's use of the

14

plaintiff's mark has likely caused dilution. *Z Productions, Inc. v. SNR Productions, Inc.*, 2011 WL 3754693, *5 (M.D.Fla. 2011). To state a claim for dilution, Florida law also requires that Plaintiffs be "the owner of a mark", Fla. Stat. 495.151(1); *see Trump Plaza of Palm Beaches Condominium Ass'n, Inc. v. Rosenthal*, 2009 WL 1812743, *9-*10 (S.D. Fla. 2009) (dismissing federal dilution claim for lack of standing where plaintiff failed to establish it was the owner of the mark at issue), and some proof that the use of a trademark decreases the plaintiff's commercial value. *See Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1186 (11th Cir. 1985). Under state anti-dilution statutes, courts have also generally required that the accused mark be nearly identical to the famous mark. *See McCarthy* § 24:117.

Plaintiffs fail to plead almost every element of a state dilution claim under Fla. Stat. § 495.151. Plaintiffs do not plead, and cannot establish, that the marks "The Situation" or "GTL" are famous, or that these alleged marks became famous before A&F used its parody slogans on t-shirts in 2010. "It is clear that anti-dilution statutes are designed to protect only strong, well-recognized marks." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 (5th Cir. 1997); *Carnival Corp.*, 74 F.Supp.2d at 1270-71 (finding plaintiff's mark not famous under federal or state dilution law despite over 20 years of use and extensive advertising and sales). Additionally, Plaintiffs do not plead any allegations showing that A&F's parody has likely caused dilution (and cannot as the parody is protected by the First Amendment), and as shown in Section C.1 cannot establish that they are the owner of any "GTL" trademark. Further, Plaintiffs do not plead any allegations that A&F's parody t-shirts decreased any commercial value of either Plaintiff. Finally, as shown in Sections B and C above, Plaintiffs cannot establish a likelihood of confusion between any of its alleged marks and A&F's use of parody slogans on t-shirts (which are strikingly different) and, therefore, cannot establish a dilution claim under Florida law. *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 533 F.Supp. 75, 84 (S.D. Fla. 1981) ("the Court's finding that it is not likely the Suave shoe would be confused with a Brooks shoe means the Plaintiff has failed to prove a violation of Florida's dilution statute, Fla. Stat. § 495.151").

### b.     A&F's "Use" Is Not Actionable Under Florida Dilution Law

A&F's use on t-shirts is not actionable under Fla. § 495.151 because, as established in Section C.2, it is a parody protected by the First Amendment. *McCarthy* § 24:90 ("embodied in both the Constitutional guarantee of free speech" and dilution law is "the general rule [that] permits anyone, competitor, critic or comedian, to use a famous mark to make fun of or to criticize the products or policies of the mark owner"); *Jordache Enters.*, 828 F.2d at 1487,1489-

90 (affirming failure of dilution claim and finding that "because of the parody aspect of Lardashe, it is not likely that public identification of JORDACHE with the plaintiff will be eroded; indeed, parody tends to increase public identification of a plaintiff's mark with the plaintiff").

Plaintiffs' allegations relating to an alleged advertising campaign also cannot form the basis for liability under § 495.151 because Plaintiffs' allegations relate only to third party news coverage of A&F's legitimate offer.  But, the explicit text of the statute exempts "all forms of news reporting and news commentary."  *See* § 495.151(3)(c).

### E.        Plaintiffs Fail To Plead A Cognizable Basis For A False Advertising Claim

Plaintiffs assert "false advertising" generally under Fla. § 495, *et seq*., and specifically under § 495.151, but neither chapter 495, nor § 495.151 provides a cause of action for deceptive, false and misleading advertising.  Plaintiffs' claim should be dismissed on this lack of a cognizable legal basis alone.  Additionally, at a minimum, a claim for false advertising must allege some false statement by A&F.  Plaintiffs base their false advertising claim on the factual allegation that A&F "falsely used Sorrentino's name, image and likeness to create a multimillion dollar advertising campaign based upon the false statement that Defendant offered money to Sorrentino so he would not wear Defendant's goods."  (ECF No. 1, ¶ 36.)  However, Plaintiffs also plead that "Defendant contacted representatives of MTV (the network that distributes the "Jersey Shore")" and "offered to pay money to the Sorrentino [sic] if he would stop wearing Abercrombie brand clothing while on the show."  (ECF No. 1, ¶ 13.)  Therefore, as Plaintiffs acknowledge, A&F did in fact offer to pay for Mr. Sorrentino not to wear its clothes.  A&F communicated the offer to MTV Networks, which has aired the "Jersey Shore" episodes on which Sorrentino has prominently worn A&F clothing, as it contained an offer not just to Sorrentino, but also to other castmates, and included a request that MTV pixilate out A&F's marks on any future episodes of the Jersey Shore to ameliorate any conclusion of endorsement of Sorrentino by A&F or product placement by A&F on the Jersey Shore show.  (*See* Ex. 1.)[10]

---

[10] Ex. A contains a copy of the letter A&F sent to MTV, which the Court may take judicial notice of since its contents are alleged in Plaintiffs' Complaint at ¶ 13.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (Eleventh Circuit follows the "incorporation by reference" doctrine, "under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed); 5A Fed. Prac. & Proc. Civ. § 1327 (3d ed. 2011) ("when the plaintiff fails to introduce a pertinent document as part of her pleading, a significant number of cases from throughout the federal court system make it clear that the

Whether the offer letter went directly to Sorrentino is immaterial, and does not establish the falsity of the offer that Plaintiffs allege was made.

Plaintiffs' other allegations also fail to establish any basis for a false advertising claim. Neither Plaintiffs' conclusory labeling of A&F's legitimate offer as a "marketing scheme" or third party news papers' characterization of the offer as a "marketing ploy" converts A&F's legitimate offer into advertising material.  Plaintiffs also fail to assert any facts to support their conclusory allegation at ¶¶ 17 and 36 that any news reporting on A&F's offer was "worth millions."  Further, Plaintiffs' own exhibits recognize the damage to A&F.  "The cast of Jersey Shore doesn't exactly consists of the kind of role models most brands covet…the show has woo [sic] millions of viewers who tune in to watch a group of hard-partying, foul-mouthed 20- and 30-somethings hanging out, hooking up and behaving raucously." (ECF No. 1-5, p.3.)  Plaintiffs' own exhibit also notes that "the teen retailer [Abercrombie] does have an image to protect," and quotes an analyst defining the image as "'classic, sexy, preppy teenagers'" and stating that "Jersey Shore shows 20-something guys and girls getting drunk every night and going out to party…so it clearly does not go with the image they [Abercrombie] have worked for over a decade to show to the world."  (ECF No. 1-5, p. 3.)[11]  Accordingly, Plaintiffs' false advertising Count IV is unplead, implausible and should be dismissed.

### F. Plaintiffs' Common Law Trademark Infringement Claim Fails Under The Same Analysis As Their Federal Trademark Claims

Plaintiffs' common law trademark infringement claim is governed by the same analysis applicable to their federal trademark infringement and unfair competition claims, discussed in Sections B and C above.  *La Dove*, 1991 WL 187473, *3 ("The tests for common law trademark infringement, unfair competition of this type and violations of 15 U.S.C. § 1125(a) are essentially the same") (denying motion for preliminary injunction where plaintiffs failed to

_____

(continued…)

defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading; that certainly will be true if the plaintiff has referred to the item in the complaint and it is central to the affirmative case").  Whether an offer was made is central to Plaintiffs' claim and Plaintiffs do not dispute that an offer was made to MTV.  (ECF No. 1, ¶¶ 13, 34-38.)

[11] As noted in fn. 6 *infra* under Eleventh Circuit law information in exhibits appended to a complaint are treated as part of the complaint and can be a basis for dismissal if the information in the exhibits contradict facts alleged in the complaint.

establish likelihood of success on the merits for trademark infringement and unfair competition claims).  Thus, as Plaintiffs have failed to state a claim for federal trademark infringement and unfair competition, the ancillary claim for common law trademark infringement in Count V similarly fails to state a claim and should be dismissed with prejudice as well.  *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1521, 1521 (11th Cir. 1991) (finding where plaintiffs' federal service mark infringement claim failed so did the related state claims under Florida statute and common law); *HI Ltd. Partnership v. Winghouse of Florida, Inc.*, 347 F.Supp.2d 1256, 1259 (M.D. Fla. 2004) (where a claimant's federal infringement and dilution claims rejected, the corresponding state law claims failed as well).

> **G.     Plaintiffs Cannot Establish A Claim For Common Law Injury to Business Reputation**

A claim for injury to business reputation is subsumed within Fla. Stat. § 495.151, already alleged in Count III, and for which Plaintiffs fail to state a claim as discussed above in Section D.2.  *See Tally-Ho*, 889 F.2d at 1024 (Section 495.151 "permits any trademark owner, whether registered or unregistered, to prohibit either a non-competitor's or competitor's use of a similar mark *if there is a likelihood of injury to business reputation* or dilution of the mark's distinctive quality.") (emphasis added).  Further, Plaintiffs' allegations for this claim consist of the same conduct already alleged and considered under its trademark claims, *i.e.*, confusion as to affiliation or approval or the origin of Plaintiffs' goods (*cf.* ECF No. 1 ¶  46 to ¶¶ 22, 27, and 41), and therefore should be dismissed on this basis as well.  *See Freedom Savings*, 757 F.2d at 1186 (affirming district court's holding for defendant on unfair competition claim where plaintiff did not complain of any conduct  by defendant not already considered in the infringement claim). Finally, Sorrentino has had actual knowledge of A&F's humor t-shirts for at least fourteen (14) months before asserting a "likelihood of injury" claim, even commenting about the t-shirts in an interview given to New York Magazine, which belie any conclusory allegation of injury as plead in Count VI.  (*See* Ex. 6.)  Based on the lack of a plausible legal theory, and facts to support the same, Plaintiffs' Count VI should be dismissed.

> **H.     Plaintiffs Fail To State A Claim Under Fla. Stat. § 540.08**
>
> **1.     A&F's Parody Is Protected By The First Amendment**

Fla. Stat. § 540.08 provides a cause of action for unauthorized publication of name or likeness, otherwise known as a "right of publicity" claim.  The Florida Supreme Court, reviewing decisions from other jurisdictions, has found that "[n]ot only do these decisions

demonstrate that the common usage of the term 'commercial' in the commercial misappropriation and right of publicity context is indeed limited to the promotion of a product or service as the courts construing section 540.08 have concluded, but they also indicate that such works should be protected by the First Amendment." *Tyne v. Time Warner Entertainment Co.*, 901 S.2d 802, 810 (2005).  "[R]ight of publicity derived from public prominence does not confer a shield to ward off caricature, parody and satire. Rather, prominence invites creative comment." *Winter v. DC Comics*, 30 Cal. 4th 881, 887, 892 (Cal. 2003) (parodic portrayal protected by First Amendment against a right of publicity claim).  A&F's parodic use does not use Sorrentino's "name or likeness," and further its parody is protected by the First Amendment.  The fact that A&F's parody was on humor t-shirts scarcely disqualifies the use from protection from the First Amendment.  *Cardtoons*, 95 F.3d at 969 (parodic baseball cards protected by First Amendment against right of publicity claim, finding "[t]he cards are no less protected because they provide humorous rather than serious commentary"); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) ("a cause of action for appropriation of another's 'name and likeness' may not be maintained against expressive works, whether factual or fictional," and "[e]ntertainment is entitled to the same constitutional protection as the exposition of ideas").

### 2. A&F Did Not Use Sorrentino's Name To Directly Promote A Product

The purpose of Fla. Stat. § 540.08 "is to prevent the use of a person's name or likeness to 'directly promote a product or service.'"  *Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp. 2d 1352 (N.D. Fla. 2010) (holding that "no reasonable inference can be drawn that Dr. Moulton was actually promoting or endorsing the notes or that [defendant] used Dr. Moulton's name to give that impression"); *Tyne*, 901 S.2d at 808.  In *Valentine v. C.B.S., Inc.*, the Eleventh Circuit affirmed the district court's decision "as a matter of law" that use of plaintiff's name in a song did not commercially exploit Valentine's name as "defendants did not use her name to directly promote a product or service . . . an interpretation that the statute absolutely bars the use of an individual's name without consent for any purpose would raise grave questions as to constitutionality."  698 F.2d 430, 433 (11th Cir. 1983).  Plaintiffs' allegation regarding A&F's legitimate offer to Sorrentino to cease wearing its clothing is insufficient to state a claim as A&F's offer did not directly promote a product or service.

### I. Plaintiffs Are Not Entitled To The Requested Relief

Plaintiffs fail to plead allegations sufficient to entitle them to the relief requested in their prayer for relief.  Plaintiffs request injunctive relief, but as they acknowledge in their complaint

19

(ECF No. 1, ¶ 16), Plaintiffs' sales of the allegedly infringing t-shirts have already ceased. Additionally, press coverage regarding A&F's offer to Sorrentino had also ceased until Plaintiffs issued their own press release threatening claims against A&F.  As such, any request for injunctive relief is moot.  *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 207 (7th Cir. 1982) (affirming denial of injunction where defendant "clearly did not threaten to persist in or resume the allegedly infringing or unfair conduct"); *Robert Stigwood Group, Ltd. v. Hurwitz*, 462 F.2d 910, 913 (2d Cir. 1972) (no "cognizable danger of recurrent [alleged] violation" from a one-shot series of performances, because there must be "something more than the mere possibility which serves to keep the case alive").  Plaintiffs also cannot recover any relief requested under Fla. Stat. §495.141, because as established in Section D.2.a, it does not own a Florida state trademark registration and relief is only available for "any owner of a mark *registered under this chapter* may proceed by suit to…."  Finally, Plaintiffs request a "reasonable royalty" in the amount of $1,000,000 without pleading any allegations establishing the basis for this amount, or for any royalty for any alleged use of Sorrentino's name or likeness.

## III.   Conclusion

For the foregoing reasons, A&F respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

/s Gerald J. Houlihan

Gerald J. Houlihan (Florida Bar No. 0458430)
Email:  houlihan@houlihanlaw.com
Houlihan & Partners, P.A.
2332 Galiano Street, Second Floor
Miami, Florida 33134
Telephone:      (305) 460-4091
Facsimile:      (305) 397-0955
Attorneys for Abercrombie & Fitch Stores, Inc.

*OF COUNSEL*

John G. Froemming, Esq.
jfroemming@jonesday.com
Jessica D. Bradley, Esq.
jbradley@jonesday.com
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:      202-879-4693
Facsimile:      202-626-1700

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s Gerald Houlihan_____

Gerald J. Houlihan

## SERVICE LIST

Darren Adam Heitner, Esq.
Koch Parafinczuk & Wolf
110 E. Broward Blvd.
Suite 1630
Fort Lauderdale, FL 33301
Telephone:     954-462-6700
Facsimile:     954-462-6567
Email: dheitner@wolfelawmiami.com


Richard Charles Wolfe, Esq.
Wolfe Law Miami, P.A.
175 SW 7 Street, Penthouse 2410
Miami, FL 33131
Telephone:     305-384-7370
Facsimile:     305-384-7371
Email: rwolfe@wolfelawmiami.com

WAI-3048938v3