**UNITED STATES DISTRCT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 11-CV-24110-LENARD/O'SULLIVAN**

**MPS ENTERTAINMENT, LLC, a**
**New Jersey Limited Liability Company,**
**and MICHAEL P. SORRENTINO,**
**an individual,**

       **Plaintiffs,**

**vs.**

**ABERCROMBIE & FITCH STORES,**
**INC., an Ohio corporation, and**
**ABERCROMBIE & FITCH, CO.,  a**
**Delaware Corporation.**

       **Defendant.**

_____/

**<u>SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

Plaintiffs, MPS ENTERTAINMENT, LLC ("MPS") and MICHAEL P. SORRENTINO ("Sorrentino") (collectively "Plaintiffs"), by their attorney and for their Second Amended Complaint against Defendants, ABERCROMBIE & FITCH STORES, INC. and ABERCROMBIE & FITCH CO., (collectively "Abercrombie" or "Defendants"), allege as follows:

**<u>JURISDICTION AND VENUE</u>**

This is a complaint for common law Trademark Infringement, statutory and common law Unfair Competition and False Description arising under § 43 of the Lanham Act (15 U.S.C. 1125(a), for Unfair Business Practices arising under Florida Statutes §§ 495.151 and 540.08, for injury to business reputation under common law, false advertising under Florida Statute § 817.41 and common law name misappropriation.

1.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121.  This Court has related claim jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.  The Court has in personam jurisdiction over Defendants, who each conduct business in this district, because each of the Defendants directed their wrongful actions and has caused damage to Plaintiffs here in the State of Florida.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 in as much as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

## PARTIES

3.     Plaintiff, MPS, is and at all times mentioned herein was, a limited liability company organized and existing under the law of the State of New Jersey, having a principal place of business in Miami, Florida and in New Jersey.  At all times herein, Plaintiff, MPS has been engaged in the business of developing, marketing and distributing goods and services under the trademarks "The Situation" and "G.T.L." which is an acronym for "GYM TAN LAUNDRY", a mark made popular by Plaintiffs.

4.     MPS is a limited liability company controlled and owned by Sorrentino and his brother Marc Sorrentino. Sorrentino is an internationally known TV star who has appeared as one of the stars on the "Jersey Shore" and he has made appearances on shows such as "Dancing with the Stars", "The Tonight Show" and many other nationally televised programs.  He is known and has gained extensive notoriety among substantial members of the public as "The Situation" or "Mike The Situation".

5.      MPS was established as the exclusive entity to license the name, image and likeness of Sorrentino along with trademarks created and closely associated with Sorrentino.

6.      Defendant, Abercrombie & Fitch Stores, Inc., is an American retailer that produces, markets, distributes, and sells clothing at stores including: Abercrombie & Fitch, Abercrombie, Hollister Co., and Hilly Hicks.

7.      Defendant, Abercrombie & Fitch Co., is the parent company of Abercrombie & Fitch Stores, Inc.

## FACTUAL BACKGROUND

8.      Formed in 2009, MPS is a corporation which owns common law and certain federally registered or applied for trademarks for use of the marks "The Situation" and "GTL" (hereinafter referenced as "the Marks") in commerce. Copies of the office records of the trademark registrations and applications are attached hereto as composite Exhibit "A".   As demonstrated in Exhibit "A", MPS owns a registered mark for the mark "The Situation" for retail stores services and clothing and it has pending registrations for use of the mark "The Situation" in class, 3, 5, 9, 14, 16, 25 and 41.

9.      MPS has pending registration applications for "GTL" in class 3, 5, 18, 25, 41, and 44, for "GTL Finder" in class 9, for "GTL University" in class 25, 41, and for "Gym Tan Laundry" in class 3, 5, 10, 18, and 44.

10.     None of MPS' trademark registration applications have been challenged or contested.

11.     Since 2010 and continuing to present, MPS has marketed, distributed, and/or sold its goods and services bearing the Marks or similar variations thereof.  Plaintiffs have spent a

large amount of time, energy and money to develop the goodwill associated with the Marks and MPS currently sells t-shirts which are competitive to the t-shirts that are sold by Defendants.

12.    While on the hit TV show the "Jersey Shore" and as in his everyday life, Sorrentino occasionally wore Abercrombie branded clothing.

13.    Starting in 2010, Defendants have alleged that they began to sell products which featured Plaintiff's marks. Defendant's actions followed the huge success of Sorrentino's TV show "Jersey Shore".

14.    On August 12, 2011, Defendant Abercrombie & Fitch Co. embarked on a grand, worldwide advertising campaign using Sorrentino's name (as the focal point), image, likeness and his trademark "The Situation" to create or enhance brand awareness for its own products, by falsely claiming that Abercrombie & Fitch Co. had offered money to Sorrentino if he would stop wearing their goods.  (Emphasis supplied)

15.    Defendant, Abercrombie & Fitch Co. concocted this false advertising campaign using the name and image of Sorrentino and his trademark "The Situation", to promote and advertise the Defendant's stores and their products. This advertising campaign claimed that Sorrentino's (use of Defendant's clothing) was contrary to the "aspirational nature of the (Abercrombie) brand".  The cornerstone of this advertising campaign was a press release issued by Abercrombie & Fitch Co.  A true and correct copy of the press release is attached hereto as Exhibit "B" and hereafter called the "Press Release".  The ad campaign has continued, even after the filing of this lawsuit.  Defendants have used Plaintiff's name, image and trademark "The Situation" on its website and Facebook page, which continues through the filing of this Second Amended Complaint.

16.     On information and belief the statement (described in paragraph 15 above), was likewise false (and known by Defendants to be false) as Sorrentino is a popular television celebrity who is very popular among the same general target market audience (ages 16-30) as Abercrombie's branded clothing.

17.     As part of Defendant's advertising campaign, on August 12, 2011 stories were written by more than 1,000 members of the press referring to the press release and many of these stories stated that the Defendant's advertising campaign was a "marketing ploy" designed (by Defendants) "to further (Abercrombie's) name into the marketplace with one of the hottest brands on TV" (Sorrentino), which was intentionally and strategically released at the peak of the back to school season.  The advertising campaign was repeated by Defendant's employees to market analysts, reporters and other influential people in order to draw attention to Defendants' products and as a part of a strategy to distract investors away from Defendants' falling profit margins.

18.     Defendant Abercrombie & Fitch Co. claimed in the Press Release that by wearing Abercrombie clothing, Sorrentino would be "causing significant damage" to the image of the Abercrombie brand.

19.     On information and belief, Abercrombie & Fitch, Co. knew the statement described in paragraph 18 above, was false.

20.     In essence, Defendant's advertising campaign made the claim that Sorrentino was not worthy enough to wear Abercrombie clothing or that Sorrentino was so undesirable that wearing Abercrombie clothing would cause "damage" to Defendants.

21.     Abercrombie & Fitch made the false statements in the press release knowing they would hurt Sorrentino.

22.     The keystone of the Defendant's advertising campaign was the huge success and popularity of Sorrentino.

23.     The falsity of the advertising campaign is further demonstrated by Defendants' actions (taken at the same time Abercrombie & Fitch Co. was claiming that Sorrentino was damaging its image) to attempt to associate themselves <u>with</u> Sorrentino, by openly advertising specifically designed t-shirts using the Plaintiffs' Marks.

24.     Defendant's actions to create the advertising campaign, were done intentionally, willfully, wantonly, and constituted gross misconduct, knowingly and done with the express knowledge that their actions would cause harm to Sorrentino and MPS.

25.     In furtherance of the Defendant's advertising campaign and as part of the marketing ploy and three (3) days <u>after</u>, Defendant, Abercrombie & Fitch Co. issued the Press Release it wrote to a representative of MTV (the network that distributes the "Jersey Shore") and allegedly offered to pay money to Sorrentino if he would stop wearing "Abercrombie" brand clothing while on the show and at other times.  Attached hereto as Exhibit "C" is a true and correct copy of that letter, which is dated on August 15, 2010.

26.     The offer described in the letter to MTV was never made to Sorrentino, nor was it ever conveyed to Sorrentino by a representative of either Defendant.  Hence, the statement contained in the press release (that it made an offer to Sorrentino not to wear their clothes), was false.

27.     At no time did either Plaintiffs or anybody acting on behalf of either Plaintiff give implied or express permission to Defendants to use the Marks or Sorrentino's name in commerce.

28.     Defendants intentionally marketed and distributed t-shirts containing an obvious reference to Plaintiffs' Marks on its website, www.abercrombie.com, Facebook Page and in its stores, selling t-shirts that stated "The Fitchuation" and "GTL...You Know The Deal" (hereafter called "Abercrombie's t-shirts").

29.     Abercrombie's t-shirts were obviously intended to create a false association between Plaintiffs and the Defendants.  Attached hereto as Exhibits "D" and "E" are representative examples of Abercrombie's t-shirts bearing facsimiles of the Plaintiff's Marks.

30.     Abercrombie's t-shirts were very popular, and upon information and belief, Defendants sold their entire inventory of the shirts.

31.     Defendant's advertising and publicity campaign (including the distribution of the Press Release) was intentionally designed to create consumer awareness of Defendant's goods, publicity and notoriety, which was worth millions of dollars to Defendants and which was accomplished or made possible, through the exploitation of Sorrentino's name, image and likeness.

32.     Defendants' advertising campaign was immensely successful; as it resulted in hundreds of newspapers and thousands of internet bloggers publishing stories about Defendants' products and their brand.  Attached hereto as Exhibit "F" is a representative sample of but one such story (which was printed on the front page as the lead business story in The Miami Herald).

33.     As a result of Defendants' false and deceptive publicity campaign, Defendants have significantly profited off of the use of a false affiliation with Sorrentino and Defendants have wrongly used Sorrentino's name, image and likeness for advertising purposes in violation of applicable law.  Put simply, there is no possible way to reconcile Defendant's statements in the Press Release with Defendants' actions to use Sorrentino's mark on its products.

## COUNT I – TRADEMARK INFRINGEMENT UNDER COMMON LAW
### (As to Both Defendants)

Plaintiffs repeat and hereby incorporate by reference as though specifically pleaded herein, the allegations of paragraphs 1 through 33.

34.     The aforesaid acts of Defendants constitute infringement of Plaintiffs rights in its registered and unregistered the Marks in violation of the common law.

35.     Plaintiffs created, adopted and used the marks "The Situation" and "GTL" in commerce.  Plaintiffs own valuable goodwill in the Marks as a result of the public's association of the Marks with Plaintiffs.

36.     Defendants' use of the Marks is an infringement of Plaintiffs' registered and unregistered trademarks for "The Situation" and "GTL" and is likely to cause confusion, mistake and deception of the public as to the identity and origin of Abercrombie's t-shirts which are depicted on Ex. "D" and "E" and causing damage and irreparable harm to Plaintiffs for which there is no adequate remedy at law.

37.     Defendants' use of the Mark "The Situation" in their advertising campaign is an infringement of Plaintiffs' registered and unregistered trademark for "The Situation," which has and will continue to cause damage and irreparable harm to Plaintiffs for which there is no adequate remedy at law.

38.     Unless Defendants are restrained from continuing its wrongful acts, the damage to Plaintiffs will increase.

39.     The acts of Defendants described above constitute trademark infringement of Plaintiffs' common law rights in its uses of the Marks.

40.     Defendant's improper use of the Marks is likely to cause confusion, mistake and deception of the public as to the identity and origin of Plaintiffs' goods and services and is likely to cause others to believe that there is a business relationship between Defendant and Plaintiffs.

41.     Defendant's wrongful acts have permitted or will permit it to capitalize on the success, goodwill and reputation of Plaintiffs and the strength of Plaintiffs' Marks in promoting their own goods and services.

42.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have been and will be deprived of the value of their Marks and related assets.

43.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have been damaged and such damage will continue unless the Court enjoins Defendant's continuing violation of Plaintiffs' trademark rights.

44.     Plaintiffs are informed and believe thereon that Defendants have unlawfully obtained profits from the sale of Abercrombie's t-shirts.  The amount of money earned by Defendants is currently unknown and can only be ascertained by an accounting of Defendants' files, books and records.

45.     An accounting is necessary to determine the true status of the amounts owed to Plaintiffs.

46.     By reason of the foregoing acts, Defendant is liable to Plaintiffs for trademark infringement under the common law.

### COUNT II – UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING – 15 U.S.C. § 1125(a)
(As to Both Defendants')

Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 33.

47.     Defendants' use of the Marks to promote, market or sell its products and services, on Abercrombie's t-shirts, are in direct competition with Plaintiffs' products and services and constitutes unfair competition and false designation of origin in violation of 15 U.S.C § 1125(a)(1)(A).

48.     Defendant's use of the Marks on Abercrombie's t-shirts is likely to cause confusion, mistake, and deception among consumers who are likely to believe that these goods are associated with or endorsed by Plaintiffs.

49.     Defendants intentionally and purposefully included false statements in the Press Release in order to enhance its brand and consumer awareness of its brand.

50.     Defendant's wrongful acts have permitted or will permit it to capitalize on the success, goodwill and reputation of Plaintiffs and the strength of their Marks in promoting their own goods and services.

51.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have been and will be deprived of the value of their Marks and their related assets.

52.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have been damaged and such damage will continue unless the Court enjoins Defendant's acts. Plaintiffs have no adequate remedy at law for Defendant's continuing violation of their rights.

### COUNT III – FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. SEC. 1125(a)
(As to Both Defendants')

Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 33.

53.     Plaintiff's products are competitive to those of Defendants.

54.     Defendants have each engaged in False Advertising by claiming that: (a) they had made an offer to Sorrentino not to wear their clothes, (b) that Sorrentino's use of Defendant's

products damaged their brand and, (c) that Defendants' fans were distressed if Sorrentino wore Defendants' clothes.

55.     In reality, this false advertisement was intentionally made to create publicity and brand awareness for Defendants', its brand, its store and its products.

56.     Defendant Abercrombie & Fitch Co. concocted this false advertising campaign using the name and image of Sorrentino, to promote and advertise the Defendant's stores and its products. This advertising campaign claimed that Sorrentino (use of Defendant's clothing) was contrary to the "aspirational nature of the (Abercrombie) brand".

57.     As part of Defendant's advertising campaign, on August 12, 2011 stories were written by many members of the press stating that the Defendant's advertising campaign was a "marketing ploy" designed "to further (Abercrombie's) name into the marketplace with one of the hottest brands on TV" which was intentionally and strategically released at the peak of the back to school season. *See* Exhibit "B"

58.     In furtherance of the Defendant's advertising campaign and as part of the marketing ploy and three (3) days <u>after</u>, Defendant Abercrombie & Fitch Co. contacted representatives of MTV (the network that distributes the "Jersey Shore") and allegedly offered to pay money to the Sorrentino if he would stop wearing "Abercrombie" brand clothing while on the show and at other times. *See* Exhibit "C"

59.     The offer described above was never made to Sorrentino, nor was it ever conveyed to Sorrentino by a representative of either Defendant.  At no time did Plaintiff or anybody acting on behalf of Plaintiff give implied or express permission to Defendants to use their marks or Sorrentino's name in commerce.

60.     Defendant, Abercrombie & Fitch Co. claimed in the Press Release that by wearing Abercrombie branded clothing, Sorrentino would be "causing significant damage" to the image of the Abercrombie brand.  In essence, Defendant's campaign was to make the ridiculous claim that Sorrentino was not worthy enough to wear Abercrombie clothing or that Sorrentino was so undesirable that wearing Abercrombie clothing would cause "damage" to Defendants.  In reality, Defendants' previously chose to associate themselves with Sorrentino through the use of the t-shirts described herein.  The center piece of the Defendant's advertising campaign was the huge success and popularity of Sorrentino, especially in the same target market as Defendants' customers.  That is the reason why Defendant's chose to attach Sorrentino to its advertising brand.  The falsity of the advertising campaign is further demonstrated by Defendants' actions (at the same time that they are claiming that Sorrentino was damaging their image) to attempt to associate themselves with Sorrentino, by openly advertising specifically designed t-shirts using the Plaintiffs' Marks.  Defendant's actions were done intentionally, willfully, wantonly, and constituted gross misconduct, knowingly and done with the express intent to cause harm to Sorrentino and MPS.

61.     Defendant intentionally marketed and distributed t-shirts containing an obvious reference to Plaintiffs' Marks on its website, www.abercrombie.com, Facebook Page, and in its stores, using shirts that stated "The Fitchuation" and "GTL…You Know The Deal".  These t-shirts were obviously intended to create a false association between Plaintiffs and the Defendants.  Attached hereto as Exhibits "D" and "E" are representative examples of Defendant's products bearing facsimiles of the Plaintiff's Marks.  These shirts were very popular, and upon information and belief, Defendants sold their entire inventory of the shirts.

62.     Defendant's advertising and publicity campaign was intentionally designed to create consumer awareness of Defendant's goods, publicity and notoriety, which was worth millions of dollars to Defendants, through the exploitation of Sorrentino's name, image and likeness.

63.     Indeed, Defendants' advertising campaign was immensely successful; as it resulted in hundreds of newspapers and thousands of internet bloggers, publishing stories about Defendants' products and their brand.  *See* Exhibit "F"

64.     As a result of Defendants' false and deceptive publicity campaign, Defendants have significantly profited off of the use of a false affiliation with Sorrentino and they have wrongly used Sorrentino's name, image and likeness for advertising purposes in violation of applicable law.

65.     As a result of the false advertising Plaintiff has been damaged in their ability to market and sell clothing that may be competitive to clothing that is sold by Defendants.

## COUNT IV – UNFAIR COMPETITION UNDER FLORIDA STATUTES §495.151
### (As to both Defendants)

Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 33.

66.     Defendant's actions discussed herein constitute unfair competition within the meaning of sections 495.151, Florida Statutes.

67.     Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendant to cease this unfair competition, as well as disgorgement of all Defendant's profits associated with this unfair competition.

68.     Plaintiffs' mark is a famous mark due to the fact that since 2009 continuing to present, Plaintiffs' have appeared on the hit TV show the "Jersey Shore" and have distributed,

and/or sold its goods and services bearing the Marks or similar variations thereof.  Plaintiffs have spent a large amount of time, energy and money to develop the goodwill associated with the Marks and MPS currently sells t-shirts which are competitive to the t-shirts by Defendants.

69.     Defendant used such mark in the stream of commerce at its retail stores starting sometime in 2010. Such use by Defendant's of Plaintiffs' famous mark has caused dilution and therefore decreased the commercial value of Plaintiff's marks.

70.     As a result of the Defendant's dilution of Plaintiff's marks, Plaintiffs' commercial value has diminished and Plaintiffs' have been damaged in their ability to market and sell products related to its famous marks.

### COUNT V – DECEPTIVE, FALSE AND MISLEADING ADVERTISNG – FLORIDA STATUTE § 495.151 (As to Abercrombie & Fitch Co.)

Plaintiff, Sorrentino repeats and hereby incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 33.

71.     The acts of Defendant, Abercrombie & Fitch described above constitute untrue and misleading advertising by as described in Florida Statute 495, *et seq.*

72.     As described herein, Defendant, Abercrombie & Fitch intentionally and purposefully included false statements in the Press Release in order to enhance its brand and consumer awareness of its brand.

73.     Defendant's use of the Marks as well as the name, image and likeness of Sorrentino in the same market is likely to create confusion, or to cause mistake or to deceive consumers as to the affiliation, connection or association of Plaintiffs' products and services, or deceive consumers as to the origin, sponsorship or approval by Plaintiffs of Defendant's products and services.

74.     Defendant, Abercrombie & Fitch also falsely used Sorrentino's name, image and likeness to create a multimillion dollar advertising campaign based upon the false statement that Defendant offered money to Sorrentino so he would not wear Defendant's goods.

75.     Defendant Abercrombie & Fitch, Co.'s wrongful acts have permitted or will permit it to capitalize on the success, goodwill and reputation of Plaintiffs and the strength of Plaintiffs' Marks in promoting their own goods and services.

76.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff, Sorrentino has been damaged and such damage will continue unless the Court enjoins Defendant's acts.   Plaintiffs have no adequate remedy at law for Defendant's continuing violation of Plaintiffs' rights.

## COUNT VI – COMMON LAW INJURY TO BUSINESS REPUTATION
### (As to both Defendants)

Plaintiff, Sorrentino repeats and hereby incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 33.

77.     Plaintiff, Sorrentino alleges that Defendants use of the infringing Marks injures and creates a likelihood of injury to his business reputation because persons encountering Plaintiff and his products and services are likely to believe that Defendants are affiliated with or related to or have the approval of Sorrentino and any adverse reaction by the public to Defendant and the quality of its products and the nature of its business will injure the business reputation to Sorrentino and the goodwill that they enjoy in connection with his Marks.

## COUNT VII – VIOLATION OF F.S. § 540.08
### (As to both Defendants)

Plaintiff, Sorrentino repeat and hereby incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 33.

78.     This is an action against Defendants for statutory misappropriation of Sorrentino's likeness for commercial purposes pursuant to Fla. Stat. § 540.08.

79.     The acts of Defendants to intentionally use Sorrentino's name, image and likeness in commerce for advertising purposes is a violation of § 540.08, Florida Statutes.

80.     Defendants published, printed, displayed or otherwise publicly used Sorrentino's image and likeness without his express written or oral consent for purposes of trade or for other commercial or advertising purposes.

81.     At no time did Sorrentino or MPS give permission to Defendants, to use Sorrentino's name, image or likeness for purposes of trade or for other commercial or advertising purposes.

82.     The use by Defendants of Sorrentino's name, image and likeness was not part of a bona fide news report, nor did it have a legitimate public interest, but rather, was part of a calculated designed advertising and publicity campaign to use and exploit Sorrentino's name, image and likeness to promote Defendant's goods.

83.     The foregoing acts by Defendants' are in violation of Fla. Stat. § 540.08 and have damaged Sorrentino.

84.     Accordingly, Plaintiff, Sorrentino is entitled to the remedies provided in Fla. Stat. § 540.08, including the payment o a reasonable royalty, which given the scope and size of the Defendant's advertising campaign and the market value of Plaintiff's status, as a celebrity endorser, is an amount, no less than $1,000,000.

### <u>COUNT VIII – ILLEGAL USE OF SORRENTINO'S NAME IN COMMERCE</u><br><u>(COMMON LAW)</u><br><u>(As to Abercrombie & Fitch Co.)</u>

Plaintiff, Sorrentino repeat and hereby incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 33, and 46 through 72.

85.     This is an action against Defendant, Abercrombie & Fitch for common law misappropriation of Sorrentino's image and likeness.

86.     Defendant, Abercrombie & Fitch use of Sorrentino's name in commerce was intentionally utilized in violation of Sorrentino's rights under the common law.

87.     Defendant, Abercrombie & Fitch published, printed, displayed or otherwise publicly used Sorrentino's image and likeness without his express written or oral consent for purposes of trade or for other commercial or advertising purposes

88.     The foregoing acts by Defendant, Abercrombie & Fitch constitute misappropriation of Sorrentino's image and likeness for commercial purposes without his consent and have damaged Plaintiffs.  Defendant had actual knowledge of the wrongfulness of their conduct and of the high probability that injury or damage to Sorrentino would result and despite that knowledge, intentionally pursued their course of conduct resulting in injury or damage to Sorrentino.  In the alternative, and even if they acted without such actual knowledge, the conduct of Defendants was so reckless that it constituted a conscious disregard for our indifference to the rights of Sorrentino.  As a result, Sorrentino is entitled to recover punitive damages against Abercrombie & Fitch, pursuant to Florida Law.

**COUNT IX – COUNT V – DECEPTIVE, FALSE AND MISLEADING ADVERTISNG –
FLORIDA STATUTE § 817.41
(As to Abercrombie & Fitch Co.)**

Plaintiffs repeat and hereby incorporate by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 33.

89.     This is a claim for violation of § 817.41., Fla. Stat., for false and misleading advertising.

90.     Defendant, Abercrombie & Fitch Co. has advertised and falsely induced the public to believe that Plaintiff, Sorrentino is associated with or have endorsed the Defendants' products and/or that Plaintiff, Sorrentino is associated with the product promoted by Defendants.

91.     Defendant, Abercrombie & Fitch Co. engaged in unlawful, unfair methods of competition, unconscionable acts and practices and unfair or deceptive acts in commerce by:

   a.   Using Sorrentino's name to generate publicity and brand awareness for Defendants without permission by Sorrentino;

   b.   Falsely stating that they had made an offer to Sorrentino not to wear their clothing, in order to create publicity and brand awareness for Defendant.

   c.   Falsely stating that Sorrentino's use of Defendant's clothing damages their image, aspirational nature of their brand and distressed Defendants' fans.

92.     Defendants' acts caused damage to Plaintiff, Sorrentino.

WHEREFORE, Plaintiffs pray:

1.     That pursuant to 15 U.S.C § 1116, Fla. Stat. §§ 465.141 and 540.08(2), Defendants and their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, and each of them, be preliminary and permanently enjoined from: (a) using the Marks, or any colorable imitation thereof; (b) using any trademark that imitates or is confusingly similar to or in anyways similar to Plaintiffs' trademark "The Situation" and "GTL", or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Plaintiffs' products and services or their connectedness to Defendants; (c) using the name, image and likeness of Sorrentino for commercial or advertising purposes, anywhere on the website or in commerce;

and (d) using any name that is confusingly similar to Sorrentino's or his nickname "The Situation" for commercial or advertising purposes.

2.    That Defendants be required to file with the Court and serve on Plaintiffs within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.    That pursuant to 15 U.S.C. § 1117, Defendants be held liable for all damages suffered by Plaintiffs resulting from the acts alleged herein;

4.    That pursuant to 15 U.S.C. § 1117, Defendants be compelled to account to Plaintiffs for any and all profits derived by it from its illegal acts complained of herein;

5.    That Defendants be ordered pursuant to 15 U.S.C. § 1118 and Fla. Stat. § 495.141 to deliver up for destruction all clothing, containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material or the like in possession, custody or under the control of Defendants bearing a trademark found to infringe Plaintiffs' trademark rights, as well as all plates, matrices, and other means of making the same;

6.    That the Court declare this to be an exceptional case and award Plaintiffs their full costs and reasonable attorneys fees pursuant to 15 U.S.C. § 1117;

7.    That Defendants be ordered, pursuant to Fla. Stat. 495.141, to pay Plaintiff, Sorrentino three times damages;

8.    That the Court grant Plaintiffs any other remedy to which they may be entitled as provided for in 15 U.S.C. § 1116 and 1117 or under state law;

9.    That Defendant, Abercrombie & Fitch Co. be ordered, pursuant to Florida Statute § 540.08(2) to pay Plaintiff, Sorrentino a reasonable royalty in the amount of not less than $1,000,000, for the use of Sorrentino's name in its advertising campaign plus exemplary and/or

punitive damages in the amount not less than $3,000,000 (unless the jury determines that Defendant's actions warrant a higher amount of punitive damages as described by F.S. 768.73(b) or (c), and in such case, to award Sorrentino the amount the jury determines as may be appropriate).

10.     That Defendant Abercrombie & Fitch Co. be ordered, pursuant to Fla. Statute § 817.41, to pay Sorrentino damages, costs, punitive damages, and attorney's allowed by such statute.

11.     That Abercrombie & Fitch Co. be ordered to pay Sorrentino reasonable damages as a result of Defendant's unlawful use of Plaintiff's name in commerce, calculated as a reasonable royalty, in an amount not less than $1,000,000.

12.     That Defendants be ordered to pay Plaintiffs reasonable damages for the damages losses, and harm cause by Defendants' actions.

13.     For such and other further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand Jury Trial of all issues.

Dated: May 4, 2012

Respectfully submitted,

**WOLFE LAW MIAMI, P.A.**
*Attorneys for Plaintiffs*
175 SW 7th Street, Suite 2410
Miami, FL 33130
Phone:  305-384-7370
Fax:      305-384-7371
By:  *s/Richard C. Wolfe*
    RICHARD C. WOLFE
    Florida Bar No.:  355607
    rwolfe@wolfelawmiami.com
    DARREN A. HEITNER
    Florida Bar No.: 85956
    dheitner@wolfelawmiami.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

<u>s/Richard C. Wolfe</u>
Richard C. Wolfe

## <u>SERVICE LIST</u>
### Case No. 11-CV-24110-LENARD/O'SULLIVAN

Gerald J. Houlihan
Houlihan & Partners, P.A.
2332 Galiano Street, Second Floor
Miami, Florida 33134
Tel. (305) 460-4091
Fax (305) 397-0955
Email: houlihan@houlihanlaw.com

Jessica D. Bradley, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel. (202) 879-7695
Fax (202) 626-1700
Email: jbradley@jonesday.com

John G. Froemming, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel. (202) 879-4693
Fax (202) 626-1700
Email:  jfroemming@jonesday.com