UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:11-cv-24110 - LENARD/O'SULLIVAN

MPS Entertainment, LLC and
Michael P. Sorrentino,

                             Plaintiffs,

v

Abercrombie & Fitch Stores, Inc. and
Abercrombie & Fitch Co.,

                             Defendants.
_____/

**DEFENDANTS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
<u>FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

# TABLE OF CONTENTS

**Page**

I.     Factual Background ................................................................................ 1

II.    Argument ................................................................................................ 2

    A.    Legal Standard ............................................................................ 2

    B.    Plaintiffs Have Not Pled A Prima Facie Case For Trademark Infringement, Unfair Competition, Or False Designation Of Origin Under § 1125(a) Or Common Law ............................................................................... 3

        1.    Plaintiffs Do Not Own Any Enforceable Common Law Trademark Rights In The Personal Nickname "The Situation" ................................. 4

        2.    Plaintiffs' Alleged Trademarks Are So Dissimilar To A&F's "Use" That There Can Be No Likelihood Of Confusion .................................... 6

        3.    A&F's FITCHUATION T-Shirt Was A Non-Actionable Parody ............ 8

        4.    A&F's "Use" Was Ornamental, Non-Trademark Use ............................ 10

        5.    A&F's Responsive Press Release Is Protected By The First Amendment, And Confusion Is Implausible ........................................... 10

    C.    Plaintiffs Fail to Plead And Cannot Establish Required Elements Of Their False Advertising Claim Under 15 U.S.C. § 1125(a) ......................................... 11

    D.    Plaintiffs Fail To Plead And Cannot Establish Required Elements Of Their Florida Unfair Competition Claim Under Fla. Stat. § 495.151 .......................... 14

        1.    Plaintiffs Omit Required Elements Of A Dilution Claim ....................... 15

        2.    A&F's "Use" Is Not Actionable Under Florida Dilution Law ................ 16

    E.    Plaintiffs Cannot Establish A Claim For Injury To Business Reputation .......... 17

    F.    Plaintiffs Fail To State A Claim Under Fla. Stat. § 540.08 Or For Common Law Misappropriation ................................................................. 17

        1.    A&F's Parody and Press Release Are Protected By The First Amendment ........................................................................................... 17

        2.    A&F Did Not Use Sorrentino's Name To Directly Promote A Product ............................................................................................... 18

        3.    Plaintiffs' Common Law Misappropriation Claim Also Fails ................ 19

    G.    Plaintiffs Fail to Plead And Prove Elements Of A Fla. Stat. § 817.41 Claim ................................................................................................ 20

III.    Conclusion ............................................................................................. 21

## TABLE OF AUTHORITIES

Page

### CASES

Almeida v. Amazon.com,
456 F.3d 1316 (11th Cir. 2006) ................................................................19

Ameritox, Ltd. v. Millennium Labs., Inc.,
2012 WL 33155 (M.D. Fla. 2012) ............................................................13

Anheuser-Busch, Inc. v. L. & L. Wings, Inc.,
962 F.2d 316, 319 (4th Cir. 1992) ..............................................................8

Armstrong Cork Co. v. World Carpets, Inc.,
597 F.2d 496 (5th Cir. 1979) ......................................................................7

Ashcroft v. Iqbal,
556 U.S. 662, 129 S.Ct. 1937 (2009) .........................................................3

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ...........................................................................1, 3, 7

Betancur v. Florida,
2008 WL 506305 (N.D. Fla. 2008) .............................................................8

Bosley Med. Institute v. Kremer,
403 F.3d 672 (9th Cir. 2005) ....................................................................10

Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.,
533 F.Supp. 75 (S.D. Fla. 1981) ..............................................................16

Bryant v. Avado Brands, Inc.,
187 F.3d 1271 (11th Cir. 1999) ..................................................................4

Burnett v. Twentieth Century Fox Film Corp.,
491 F. Supp. 2d 962 (C.D. Cal. 2007) ..................................................9, 11

Cardtoons, L.C. v. Major League Baseball Players Ass'n,
95 F.3d 959 (10th Cir. 1996) ................................................................9, 11

Carnival Corp. v. SeaEscape Casino Cruises, Inc.,
74 F.Supp.2d 1261 (S.D.Fla. 1999) ..........................................................16

Cityscapes Intern. Realty Group v. CCS-Bel Mare, LLC,
2011 WL 2669666 (M.D. Fla. 2011) ........................................................20

Cleary Building Corp. v. David A. Dame, Inc.,
674 F.Supp.2d 1257 (D.Colo. 2009) ..........................................................9

# TABLE OF AUTHORITIES

## (continued)

**Page**

*Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
    697 F.Supp. 1136 (E.D. Cal. 1987).................................................................7

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
    508 F.3d 641 (11th Cir. 2007) .........................................................3, 6, 7, 9

*Daly v. Viacom, Inc.*,
    238 F. Supp. 2d 1118 (N.D. Cal. 2002) ........................................................18

*Dan Tana v. Dantanna's*,
    611 F.3d 767 (11th Cir. 2010) .....................................................................4

*Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*,
    369 F.3d 1197 (11th Cir. 2004) ................................................................6, 7

*Exxon Corp. v. Oxxford Clothes, Inc.*,
    109 F.3d 1070 (5th Cir. 1997) ...................................................................16

*Faulkner Press, LLC v. Class Notes, LLC*,
    756 F. Supp. 2d 1352 (N.D. Fla. 2010).................................................18, 19

*Freedom Sav. and Loan Ass'n v. Way*,
    757 F.2d 1176 (11th Cir. 1985) ............................................................15, 17

*Frehling Enters., Inc. v. Int'l Select Group, Inc.*,
    192 F.3d 1330 (11th Cir. 1999) ...................................................................6

*Futuristic Fences, Inc. v. Illusion Fence Corp.*,
    558 F. Supp. 2d 1270 (S.D. Fla. 2008) ......................................................14

*Gift of Learning Found., Inc. v. TGC Inc.*,
    329 F.3d 792 (11th Cir. 2003) ...............................................................4, 5, 7

*Griffin Indus. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007) ...............................................................2, 3

*HBP, Inc. v. Am. Marine Holdings, Inc.*,
    290 F. Supp. 2d 1320 (M.D. Fla. 2003).......................................................9

*Hensley Mfg., Inc. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) .......................................................................8

*HI Ltd. P'ship v. Winghouse of Fla., Inc.*,
    347 F.Supp.2d 1256 (M.D. Fla. 2004).........................................................15

iii

# TABLE OF AUTHORITIES

## (continued)

Page

*Hill Dermaceuticals, Inc. v. Rx Solutions*,
  306 Fed. Appx. 450 (11th Cir. 2008) .................................................................20

*Horsley v. Feldt*,
  304 F.3d 1125 (11th Cir. 2002) .........................................................................13

*In re Pro-Line Corp.*,
  28 USPQ2d 1141 (TTAB 1993) .........................................................................10

*Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*,
  326 F.3d 687 (6th Cir. 2003) .............................................................................10

*Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*,
  931 F.2d 1521 (11th Cir. 1991) ......................................................................5, 14

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) ...........................................................................3

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
  299 F.3d 1242 (11th Cir. 2002) ....................................................................11, 13

*Jordache Enters. v. Hogg Wyld, Ltd.*,
  828 F.2d 1482 (10th Cir. 1987) .......................................................................8, 16

*Kramer v. Unitas*,
  831 F.2d 994 (11th Cir. 1987) ............................................................................20

*La Dove Inc. v. Playtex Jhirmack, Inc.*,
  1991 U.S. Dist. LEXIS 11337 (S.D. Fla. 1991) ...................................................3

*Lane v. MRA Holdings, LLC*,
  242 F. Supp.2d 1205 (M.D. Fla. 2002) ..............................................................19

*Lipscher v. LRP Publications, Inc.*,
  266 F.3d 1305 (11th Cir. 2001) ..........................................................................12

*Locke v. Wells Fargo Home Mort.*,
  2010 WL 4941456 (S.D. Fla. 2010) ...................................................................20

*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*,
  106 F.3d 355 (11th Cir. 1997) ............................................................................10

*Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*,
  2012 WL 2248593 (SDNY 2012) .......................................................................11

iv

## TABLE OF AUTHORITIES

### (continued)

Page

*Marvel Enters., Inc. v. NCSoft Corp.*,
  2005 U.S. Dist. LEXIS 8448 (C.D. Cal. 2005)..........................................................8

*MCW, Inc. v. Badbusinessbureau.com, L.L.C.*,
  2004 WL 833595 (N.D. Tex. 2004)......................................................................14

*MoniLisa Collection, Inc. v. Clarke Products, Inc.*,
  2011 WL 2892620 (M.D. Fla. 2011) ...................................................................14

*Murray v. Cable NBC*,
  86 F.3d 858 (9th Cir. 1996) ...........................................................................7, 11

*Nutrivida, Inc. v. Inmuno Vital, Inc.*,
  1997 WL 1106569 (S.D. Fla. 1997) ...................................................................20

*Pizza Hut, Inc. v. Papa John's Int'l Inc.*,
  227 F.3d 489 (5th Cir. 2000) ...........................................................................12

*Porous Media Corp. v. Pall Corp.*,
  201 F.3d 1058 (8th Cir. 2000) .........................................................................14

*Pyles v. United Air Lines*,
  79 F.3d 1046 (11th Cir. 1996) ...........................................................................2

*Rollins, Inc. v. Butland*,
  951 So.2d 860 (Fla.App. 2 Dist. 2006).............................................................20

*Sinaltrainal v. Coca-Cola Co.*,
  578 F.3d 1252 (11th Cir. 2009) ..........................................................................3

*Snow v. DirecTV, Inc.*,
  450 F.3d 1314 (11th Cir. 2006) ..........................................................................2

*Solis-Ramirez ex. rel. Solis v. U.S. Dep't of Justice*,
  758 F.2d 1426 (11th Cir. 1985) ..........................................................................2

*Sweet v. City of Chi.*,
  953 F.Supp. 225 (N.D. Ill. 1996) ........................................................................8

*Tally-Ho Inc. v. Coast Cmty. Coll. Dist.*,
  889 F.2d 1018 (11th Cir. 1990) ......................................................................3, 17

*Tiger Direct, Inc. v. Apple Computer, Inc.*,
  2005 WL 1458046 (S.D. Fla. 2005) .....................................................................9

WAI-3077038v1

# TABLE OF AUTHORITIES

## (continued)

Page

*Toho Co. v. Sears, Roebuck & Co.*,
  645 F.2d 788 (9th Cir. 1981) ...................................................................8, 9

*Tommy Hilfiger Licensing, Inc. v. Nature Labs*,
  LLC, 221 F. Supp. 2d 410 (S.D.N.Y. 2002) .............................................8

*Trump Plaza of Palm Beaches Condo. Ass'n, Inc. v. Rosenthal*,
  2009 WL 1812743 (S.D. Fla. 2009) ........................................................15

*Tyne v. Time Warner Entertainment Co.*,
  901 S.2d 802, 810 (2005).........................................................................18

*Universal City Studios, Inc. v. Casey & Casey, Inc.*,
  622 F.Supp. 201 (S.D. Fla. 1985) .............................................................8

*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*,
  2012 WL 2076691 (11th Cir. 2012) ........................................................11

*Valentine v. C.B.S., Inc.*,
  698 F.2d 430 (11th Cir. 1983) .................................................................19

*Welding Servs., Inc. v. Forman*,
  509 F.3d 1351 (11th Cir. 2007) .................................................................7

*Winter v. DC Comics*,
  30 Cal. 4th 881 (Cal. 2003).....................................................................18

*Z Productions, Inc. v. SNR Productions, Inc.*,
  2011 WL 3754693 (M.D.Fla. 2011) ........................................................15

## STATUTES

15 U.S.C. § 1125(a) .................................................................3, 6, 10, 11, 13

Fla. Stat. § 495.151 .....................................................................1, 15, 16, 17

Fla. Stat. § 540.08 ...........................................................................17, 18, 19

Fla. Stat. § 817.40(5).........................................................................................20

Fla. Stat. § 817.41 ...........................................................................................20

## RULES

Fed. R. Civ. P. 10(c) .........................................................................................2

WAI-3077038v1

## TABLE OF AUTHORITIES

### (continued)

**Page**

Fed. R. Civ. P. 12(b)(6)........................................................................................... *passim*

Fed. R. Evid. 201 .............................................................................................................4

**OTHER AUTHORITIES**

5A Fed. Prac. & Proc. Civ. § 1327 (3d ed. 2011) ..........................................................13

*McCarthy on Trademarks and Unfair Competition* § 13:2 ............................................4

*McCarthy on Trademarks and Unfair Competition* § 24:41 .........................................7

*McCarthy on Trademarks and Unfair Competition* § 24:90 .......................................16

*McCarthy on Trademarks and Unfair Competition* § 24:117 .....................................15

*McCarthy on Trademarks and Unfair Competition* § 27:24 .......................................11

*McCarthy on Trademarks and Unfair Competition* § 27:109 .....................................12

*McCarthy on Trademarks and Unfair Competition* § 31:155 .......................................8

*McCarthy on Trademarks and Unfair Competition* § 32:121:25 .................................11

*Moore's Federal Practice* § 12.34[4][a]..........................................................................2

Trademark Manual of Examining Procedure..................................................................10

WAI-3077038v1

Defendants Abercrombie & Fitch Stores, Inc. and Abercrombie & Fitch Co. ("A&F") move to dismiss the Second Amended Complaint ("SAC") of Plaintiffs MPS Entertainment, LLC ("MPS"), and Michael P. Sorrentino ("Sorrentino") pursuant to Fed. R. Civ. P. 12(b)(6) because the Plaintiffs have failed to state a plausible legal and factual basis for each claim. Plaintiffs' federal unfair competition and common law trademark claims fail as Plaintiffs did not own valid common law rights in any "The Situation" trademark. A&F's FITCHUATION t-shirt constitutes both a non-actionable parody and was not a trademark use. A&F's responsive press release to Sorrentino's wearing of A&F-branded product on Jersey Shore in front of millions of television viewers is a non-commercial use protected by the First Amendment, for which there is no likelihood of confusion, and is not actionable under any legal theory. Plaintiffs cannot establish a claim under Fla. Stat. § 495.151 because they have again failed to plead any facts to support the required elements of a trademark dilution claim. Plaintiffs' false advertising claims also fail because they have not alleged any false, material misrepresentation of fact. Finally, Plaintiffs have also failed to plead a plausible legal basis for common law injury to business reputation. Because these deficiencies cannot be corrected, the dismissal should be with prejudice.

## I.      Factual Background

Sorrentino is a castmate on the MTV "reality" show "Jersey Shore." (ECF No. 68 ¶¶ 4,12.) Sorrentino uses the personal nickname "Mike The Situation" or "The Situation" on the show. (*Id.*) A&F periodically sells parody t-shirts as part of its humor line of t-shirts that reference popular culture. A&F neither claims trademark rights in the parodies used, nor uses parodies as trademarks (*i.e.*, as indicators of source) on its t-shirts. In Jan. 2010, as part of its line of parody t-shirts, A&F ordered a t-shirt featuring a phrase that parodied the "Jersey

Shore".[1]  (ECF No. 68-4.)  Plaintiffs were aware of, but did not object to, the parody t-shirt until more than a year later when the t-shirts were no longer being sold.  (Ex. 3.)  Later, on Aug. 11, 2011, Sorrentino wore sweat pants bearing A&F's logo throughout most of the episode of Jersey Shore.  (ECF No. 68-6 p. 3.)  This use triggered A&F's concern that the prominent display of its logo would be viewed as an endorsement by A&F of the raucous behavior on the show.  A&F responded with a letter to MTV on Aug. 15, 2011 requesting that its marks be pixilated out of future episodes, and offered Sorrentino and other castmates money to stop wearing its products. (ECF Nos. 68-2, 68-6 p.2; Ex. 1.)  On Aug. 16, 2011, after sending this letter to MTV, A&F issued a press release announcing its offer to Sorrentino and noting that A&F did *not* endorse the conduct depicted on Jersey Shore.[2]

## II.    Argument

### A.    Legal Standard

Dismissal of a claim is proper "if the complaint lacks an allegation regarding an element necessary to obtain relief or if the plaintiff fails properly to allege standing to sue."  *Moore's Federal Practice* § 12.34[4][a]; *see also Pyles v. United Air Lines*, 79 F.3d 1046, 1049 (11th Cir. 1996).  A dismissal under Rule 12(b)(6) can be based on either the lack of a cognizable legal

---

[1] On May 16, 2012 Plaintiffs voluntarily dismissed all claims that A&F infringed their rights in any "GTL" trademark with prejudice, (ECF No. 51), so A&F does not address those claims here.

[2] Plaintiffs' exhibits contradict their allegations that the press release was issued and that stories were written on Aug. 12, 2011.  (ECF No. 68 ¶¶ 14, 17, 57.)  The by-line of the press release shows the issue date Aug. 16, 2011 at 6:50pm (ECF No. 68-2 p. 2), and the news articles are dated Aug. 18, 2011 and state that the press release was released on "Tuesday" (which would be Aug. 16, 2011).  (ECF Nos. 68-2 p. 3, 68-6 p. 2.)  Information in exhibits that Plaintiffs attached to its SAC is treated by the court as part of the complaint and can serve as a basis for dismissal. *Griffin Indus. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."); *Solis-Ramirez ex. rel. Solis v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (same).

theory or the lack of sufficient facts alleged under a cognizable legal claim.  *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006).  On a 12(b)(6) motion, the Court only "accepts all well-pled facts alleged by [*sic*] in the complaint as true."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009).  To state a plausible claim, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B.  Plaintiffs Have Not Pled A Prima Facie Case For Trademark Infringement, Unfair Competition, Or False Designation Of Origin Under § 1125(a) Or Common Law

To establish a prima facie case under § 1125(a) or the common law, a plaintiff must show (1) that the plaintiff had prior enforceable trademark rights, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two. *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (citation omitted); *Tally-Ho Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1990) (trademark rights are appropriated only through *actual prior use* in commerce); *La Dove Inc. v. Playtex Jhirmack, Inc.*, 1991 WL 187473, *3 (S.D. Fla. 1991) ("The tests for common law trademark infringement, unfair competition of this type and violations of 15 U.S.C. § 1125(a) are essentially the same").

Plaintiffs' Counts I and II should be dismissed because they cannot establish any prior enforceable trademark rights in the alleged THE SITUATION marks. *Gift of Learning Found., Inc. v. TGC Inc.*, 329 F.3d 792, 801 (11ᵗʰ Cir. 2003) ("The confusion that plaintiff claims exists is irrelevant unless the mark is protectible in the first instance").[3]  In addition, Plaintiffs cannot establish that A&F's parody or non-commercial press release was likely to cause any confusion.[4]

### 1. Plaintiffs Do Not Own Any Enforceable Common Law Trademark Rights In The Personal Nickname "The Situation"

"Personal names are one of the classes of marks that do not have the status of a protectable mark upon mere adoption or use.  They acquire legally protectable status only after they have had such an impact upon a substantial part of the buying public as to have acquired 'secondary meaning.'  That is, the public has come to recognize the personal name as a symbol *that identifies and distinguishes the goods or services of only one seller*."  *McCarthy* § 13:2 (emphasis added); *Dan Tana v. Dantanna's*, 611 F.3d 767, 774 (11th Cir. 2010) ("Names—both surnames and first names—are regarded as descriptive terms" for which one "must prove that the name has acquired a secondary meaning").  "Secondary meaning is the connection in the consumer's mind between the mark and the product's producer."  *Gift of Learning Found.,* 329

---

[3] Plaintiffs' Ex. A contains print-outs from the U.S. Patent & Trademark Office's ("USPTO") TESS database which do not list the current status of its alleged marks.  However, the records in the USPTO public TARR database (which contains the status of every pending trademark application and registration), [*see*: http://tarr.uspto.gov/] show that MPS has merely *applied* to register "The Situation" as a trademark.  A&F attaches as Ex. 2 the corresponding TARR print-outs with status information for the alleged "The Situation" marks asserted in Ex. A (ECF No. 68-1).  The Court take judicial notice of the information in these public records (and other USPTO public records referenced herein) pursuant to Fed. R. Evid. 201.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999) (SEC filings could be judicially noticed as "public records").

[4] Plaintiffs incorrectly asserts that MPS owns a registered mark for 'The Situation' for retail store services and clothing. (ECF No. 68 ¶ 8).  Plaintiffs' Ex. A (at p. 26) and A&F's Ex. 2 (at p. 37) show that MPS only owns a single registration for a stylized, upside-down SITUATION & Design mark acquired from a third party subsequent to A&F's use.  *See* A&F's motion to strike.  Plaintiffs' unsupported and contradicted allegation should not be accepted as true.

4

F.3d at 800 (no secondary meaning where plaintiff lacked "any evidence that the public associates the mark with [plaintiff's] business"). "Plaintiff has the burden of sustaining a high degree of proof in establishing a secondary meaning for a descriptive term." [5] *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1525 (11th Cir. 1991) (five years of use and limited advertising failed to establish secondary meaning); *Gift of Learning Found.*, 329 F.3d at 801 ("plaintiff has not demonstrated a connection between the mark and the plaintiff's business" and "length and manner of [plaintiff's] use of its mark was not sufficiently sustained or pervasive"). Additionally, in order to establish a protectable interest in a term, "secondary meaning must attach to the mark before [defendant] first used the mark." *Investacorp*, 931 F.2d at 1524.

Plaintiffs allege that Sorrentino is known as "The Situation" or "Mike The Situation" (ECF No. 68 ¶ 4), and therefore the alleged trademark "The Situation" falls into the category of personal names for which Plaintiff must plead and prove secondary meaning. Plaintiffs have not pled facts sufficient to establish secondary meaning, *i.e.*, that the consuming public recognizes the "The Situation" as a *source of goods or services* rather than merely a character on a reality television show—much less as of the time of A&F's alleged use. Beyond asserting use starting in 2010, Plaintiffs plead no facts demonstrating the manner of its use, advertising or promotional expenditures, any efforts to promote a connection in the public's mind between the personal nickname "The Situation" and any *business* (rather than Sorrentino's appearance on a reality television show), or the extent to which the public actually identifies the nickname "The Situation" with any *good or service*. Importantly, Plaintiffs admit that they did not use their

---

[5] The Eleventh Circuit considers four factors in determining whether a particular mark has acquired secondary meaning: "(1) the length and manner of use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's business; and (4) the extent to which the public actually identifies the name with the plaintiff's service." *Id.*

WAI-3077038v1

alleged "The Situation" mark until June 2010 (and not on t-shirts until late 2010) (Ex. 4),[6] while A&F began selling its t-shirt in Feb. 2010 (Ex. 5), and therefore Plaintiffs cannot establish secondary meaning prior to A&F's use on its parody t-shirts as required.

> **2.     Plaintiffs' Alleged Trademarks Are So Dissimilar To A&F's "Use" That There Can Be No Likelihood Of Confusion**

Plaintiffs' alleged trademark for "The Situation" is so dissimilar to A&F's "use" of the phrase "The Fitchuation" that it fails to state a claim for trademark infringement under §1125(a) or common law.  "[T]he touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion."  *Custom Mfg.*, 508 F.3d at 647.  The Eleventh Circuit uses the seven factors set forth in *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) to analyze likelihood of confusion.[7]  The Eleventh Circuit instructs that "[t]he appropriate weight to be given to each of these factors varies with the circumstances of the case."  *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1207 (11th Cir. 2004); *see also Murray v. Cable NBC*, 86 F.3d 858, 861 (9th Cir. 1996) (affirming 12(b)(6) dismissal of a trademark infringement claim on a small sub-set of likelihood of confusion factors).

The similarity of marks has always been considered a critical question in the likelihood of confusion analysis.  *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 502-05 (5th Cir.

---

[6]  The only allegations in the SAC related to use of "The Situation" in connection with goods is that Plaintiffs assert that MPS *currently* sells t-shirts it considers competitive to t-shirts sold by A&F (ECF No. 68 ¶ 11) and that it has filed pending trademark applications (which have not been granted) (ECF No. 68 ¶ 8), neither of which demonstrates secondary meaning in "The Situation" prior to A&F's parodic use on t-shirts.  *Gift of Learning Found.*, 329 F.3d at 801 (efforts to protect an alleged mark by filing trademark applications insufficient to establish trademark rights where plaintiff cannot prove secondary meaning).

[7]  These factors are: (1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets (trade channels) and customers, (5) similarity of advertising media, (6) defendant's intent and (7) actual confusion.

1979) (without "critical finding of trademark similarity," finding of likelihood of confusion could not stand).  "Overwhelming visual dissimilarity can defeat an infringement claim, even where the other six factors all weigh in favor of the plaintiff."  *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007).  Where alleged "conflicting marks are overwhelmingly dissimilar, a summary dismissal of the infringement claim is proper even if all of the other factors tip in favor of the plaintiff."  *McCarthy* § 24:41; *Dippin' Dots*, 369 F.3d at 1209 ("no reasonable jury could find that even a hurried 8-18 year old impulse shopper could confuse them"); *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F.Supp. 1136, 1145 (E.D. Cal. 1987) (12(b)(6) dismissal of trademark claim where "absence of substantial similarity leaves little basis for asserting a likelihood of confusion").

Plaintiffs' variety of alleged "SITUATION" marks are so different in both wording and stylization from A&F's parodic use that Plaintiffs cannot meet this critical element:

| Plaintiffs' Alleged Marks | A&F's Use of Phrase Alleged by Plaintiffs: "The Fitchuation" |
|---|---|
|  SITUATION NATION (ECF No. 68 -1.) | (ECF No. 68-4.) |

"Recovery under the Lanham Act requires, at a minimum, that confusion, mistake, or deception be likely, not merely possible."  *Custom Mfg.*, 508 F.3d at 651.  Even before *Twombly* and its progeny, many courts have dismissed trademark infringement claims under Rule 12(b)(6) where the allegations did not support any plausible finding of likelihood of confusion.  *See Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir. 1981) (affirming 12(b)(6) dismissal); *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 611 (6th Cir. 2009) (affirming 12(b)(6) dismissal

where facts insufficient to show confusion as to the source of the products); *Sweet v. City of Chi.*, 953 F.Supp. 225, 231-232 (N.D. Ill. 1996) (12(b)(6) dismissal); *Marvel Enters., Inc. v. NCSoft Corp.*, 2005 WL 878090, *4 (C.D. Cal. 2005) (granting 12(b)(6) dismissal based on dissimilarity of word marks); *Betancur v. Florida*, 2008 WL 506305, (N.D. Fla. 2008) (12(b)(6) dismissal as trademark claim requires showing that "defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services").

### 3.   A&F's FITCHUATION T-Shirt Was A Non-Actionable Parody

It is well established that, "[i]f the difference in wording or appearance of the designation together with the context and overall setting is such as to convey to the ordinary viewer that this is a joke, not the real thing, then confusion as to source, sponsorship, affiliation or connection is unlikely." *McCarthy* § 31:155. The Eleventh Circuit and other courts recognize that parody is not actionable as trademark infringement or unfair competition. *Universal City Studios, Inc. v. Casey & Casey, Inc.*, 622 F.Supp. 201, 204-05 (S.D. Fla. 1985), aff'd without op., 792 F.2d 1125 (11th Cir. 1986) (MIAMI MICE t-shirts); *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 319, 321 (4th Cir. 1992) (beer label t-shirt that intentionally imitated non-verbal portion of Budweiser label was a parody, the "T-shirt design fits a conventional definition of trademark parody"); *Jordache Enters. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487,1489 (10th Cir. 1987) (no confusion between LARDASHE and plaintiff's JORDACHE mark as "[a]n intent to parody is an intent not to confuse the public"); *Tommy Hilfiger Licensing, Inc. v. Nature Labs*, LLC, 221 F. Supp. 2d 410, 415 (S.D.N.Y. 2002) (granting summary judgment that TOMMY HOLEDIGGER does not infringe TOMMY HILFIGER, "as the joke is clear enough to result in no confusion").

Dismissal of trademark claims under Rule 12(b)(6) is proper where the alleged infringing conduct is merely a parody, and therefore likelihood of confusion is not possible. *See Toho Co.*, 645 F.2d at 791 (affirming 12(b)(6) dismissal of claims based on GODZILLA trademark against

BAGZILLA and the phrase "monstrously strong", "the contention that Sears intends to confuse consumers is implausible: Sears means only to make a pun"); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962 (C.D. Cal. 2007) (granting 12(b)(6) dismissal of trademark claim based on parody, "[w]here a defendant uses a variation on plaintiff's mark merely to make a clever turn of phrase…then confusion as to source, sponsorship, affiliation or connection is unlikely"; "[p]ublic figures, such as Ms. [Carol] Burnett, are frequent targets of parodies"); *Cleary Building Corp. v. David A. Dame, Inc*., 674 F.Supp.2d 1257, 1268 (D.Colo. 2009) (granting 12(b)(6) dismissal; "Lanham Act is intended to protect the ability…to distinguish among competing producers … trademark rights cannot be used to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view").

A&F's t-shirt bearing the phrase "The Fitchuation" was a pun or turn of phrase, using A&F's own famous trademark "FITCH"[8] to parody and poke fun at Sorrentino's nickname for himself as "The Situation". [9]  *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 969 (10th Cir. 1996) (parodic baseball cards were "no less protected because they provide humorous rather than serious commentary").  Sorrentino has appeared on several nationally televised programs (ECF No. 68 ¶ 4), and as such is a public figure, subject to being parodied by virtue of his presence in the public eye.  "[T]he requirement of trademark law is that

---

[8] A&F's challenged t-shirt challenged clearly bears A&F's famous mark "FITCH", and therefore identifies the source of the product, eliminating any likelihood of confusion.  *See Custom Mfg.*, 508 F.3d at 652 n.10 (use of house brand significant in reducing likelihood that consumers would be confused as to source ); *Tiger Direct, Inc. v. Apple Computer, Inc.*, 2005 WL 1458046, *16 (S.D. Fla. 2005) (J. Lenard) (parties' marks "distinctly different" as Apple's use occurred in "Apple-branded environment"); *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1332-33 (M.D. Fla. 2003) (no confusion where defendant prominently used its mark).

[9] Just as Sorrentino can assign his abs the rather humorous nickname "the situation," fans of A&F can poke fun at Sorrentino's decision to assign himself the self-important nickname (and express their love of A&F) by wearing t-shirts calling themselves "fitchuation[s]."

a likely confusion of source, sponsorship or affiliation must be proven, which is not the same thing as a 'right' not to be made fun of." *McCarthy* § 31:155.

### 4.   A&F's "Use" Was Ornamental, Non-Trademark Use

To be actionable, A&F must use the alleged trademark as a trademark. *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003) ("If defendants are only using [plaintiff's] trademark in a "non-trademark" way - that is, in a way that does not identify the source of a product - then trademark infringement and false designation of origin laws do not apply"); *see also Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 361 (11th Cir. 1997) (affirming that sign not service mark use as it did not identify or distinguish services).  Where an alleged mark is used in large print which fills a large portion of the shirt, such use is deemed merely ornamental.  *See In re Pro-Line Corp.*, 28 USPQ2d 1141, 1142 (TTAB 1993); TMEP §1202.03(a).  A&F's use of a parody phrase in large print across a large portion of its shirt is not trademark use, and further avoids any likelihood of confusion.

### 5.   A&F's Responsive Press Release Is Protected By The First Amendment, And Confusion Is Implausible

The Lanham Act requires that use of a plaintiff's alleged mark be "in connection with … goods or services" and that the "confusion," "mistake," or "dece[ption]" be with a defendant's "goods, services, or commercial activities" to state a claim under § 1125(a).  15 U.S.C. § 1125(a); *Bosley Med. Institute v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) ("Infringement claims are subject to a commercial use requirement.")  A&F's reference to Sorrentino in a press release does not meet this core requirement.  Further, the Eleventh Circuit recently recognized the court's need to "read the Lanham Act narrowly to avoid First Amendment concerns." *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 2012 WL 2076691, *8-9 (11th Cir. 2012).  Where, as here, the reference to an individual in a non-commercial manner is clear on its face, and does not

10

mislead, confusion is implausible and a trademark infringement claim will not lie. *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 2012 WL 2248593, *7 (SDNY 2012) (dismissing trademark claim on First Amendment grounds were "a claim of confusion under the Lanham Act 'is simply not plausible'"); *Burnett*, 491 F.Supp.2d at 973 (12(b)(6) dismissal where no likelihood of confusion that viewers would believe Carol Burnett endorsed a Family Guy sketch making fun of her). "A trademark infringement suit may be dismissed on a 12(b)(6) motion if the allegations are totally without a legal foundation that could lead to liability." *McCarthy* § 32:121:25; *see Murray*, 86 F.3d at 861. Accordingly, for each of these independent reasons stated in Sections B.1-B.5, Counts I and II should be dismissed with prejudice.

### C.  Plaintiffs Fail to Plead And Cannot Establish Required Elements Of Their False Advertising Claim Under 15 U.S.C. § 1125(a)

Plaintiffs have not pled and cannot establish any *material*, *false* or misleading representation of *fact* as required to state a false advertising claim in the Eleventh Circuit.[10] "Essential to any claim under section 43(a) of the Lanham Act is a determination of whether the challenged statement is one of fact--actionable under section 43(a)--or one of general opinion-- not actionable under section 43(a)…general statements of opinion cannot form the basis for Lanham Act liability." *Pizza Hut, Inc. v. Papa John's Int'l Inc.*, 227 F.3d 489, 495-496 (5th Cir. 2000) (no legally sufficient basis to find that slogan was false or misleading statement of fact); *McCarthy* § 27:109 ("Under basic principles of free speech, there is no such thing as an officially

---

[10] To state a false advertising claim in the Eleventh Circuit, Plaintiffs must establish (1) a false or misleading description or representation of fact (2) that misrepresents the nature, qualities or geographic origin of A&F's goods or Plaintiffs' goods (3) in commercial advertising or promotion; (3) the ads deceived, or had the capacity to deceive, consumers; (4) the deception had a material effect on purchasing decisions; (5) the misrepresented product or service affects interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false advertising. 15 U.S.C. § 1125(a); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002); McCarthy § 27:24.

'wrong' opinion").  A representation of fact "must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact."  *Pizza Hut*, 227 F.3d at 496.  "The decision as to whether a given statement is one of fact or opinion is one of law for the judge." *McCarthy* § 27:109.

Plaintiffs base their false advertising claim on statements of opinion which cannot be proven true or false: A&F's "deep[] *concern*[] that Mr. Sorrentino's association with our brand could cause significant damage to our image," and A&F's "*belie[f]* [that] this association is contrary to the aspirational nature of our brand, and may be distressing to many of our fans." (ECF Nos. 68-2 p. 2, 68 ¶¶ 54, 60.)  Neither opinion is a statement of fact that can form the basis for Lanham Act liability.[11]  The only statement of fact is that A&F offered Sorrentino money to not wear their brand (ECF No. 68-2 p. 2), but Plaintiffs' allegations and exhibits demonstrate that this statement is not false.  *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1314 (11th Cir. 2001) (judgment as a matter of law appropriate where plaintiff could not show falsity).  Plaintiffs' recognize that A&F did in fact send a letter to MTV containing an offer to Sorrentino not to wear its clothing.  (ECF No. 68 ¶ 25.)[12]  A&F sent the offer to MTV Networks, which has produced and aired the "Jersey Shore" episodes on which Sorrentino has prominently worn A&F clothing

---

[11] Plaintiffs' allegation that Sorrentino is popular among the same general target market audience as Abercrombie's branded clothing (ECF No. 68 ¶ 16) cannot bootstrap A&F's statement of opinion into an actionable misrepresentation of fact.  Plaintiffs' Ex. F recognizes the potential damage to A&F's brand.  "The cast of Jersey Shore doesn't exactly consist of the kind of role models most brands covet…a group of hard-partying, foul-mouthed 20- and 30-somethings hanging out, hooking up and behaving raucously."  (ECF No. 68-6 p. 3.)  Plaintiffs' Ex. F also notes that "teen retailer [Abercrombie] does have an image to protect," and quotes an analyst stating that "Jersey Shore shows 20-something guys and girls getting drunk every night and going out to party…so it clearly does not go with the image they [Abercrombie] have worked for over a decade to show to the world."  (ECF No. 68-6 p. 3.)

[12]  Plaintiffs assert that Ex. C (ECF No. 68-3) contains a copy of the letter sent by A&F to MTV with the offer, but on its face Ex. C contains a letter to Sorrentino's counsel on Sept. 14, 2011 responding to their allegations, and as such any allegations related to Ex. C are unsupported.

(*Id.* ¶¶ 12, 25) because it contained an offer both to MTV to have its character (Sorrentino) wear another brand, as well as other cast members, and included a request that MTV pixelate out A&F's marks on future episodes of Jersey Shore to ameliorate any conclusion of endorsement or product placement by A&F.  (*See* ECF No. 68-2 p. 2; Ex. 1.)[13]  Additionally, Plaintiffs' exhibits demonstrate that A&F's press release issued on Aug. 16, 2011,  after A&F made its offer to MTV on Aug. 15, 2011 (*see* Ex. 1), and contradict Plaintiffs' allegation that the press release was issued **before** A&F made its offer.[14]  (ECF No. 68 ¶¶ 25, 58.)  Whether the offer letter went directly to Sorrentino is also immaterial to any consumer purchasing decisions, and does not establish the falsity of the offer that *Plaintiffs allege* was made.  *Johnson & Johnson*, 299 F.3d at 1250 ("materiality requirement is based on the premise that not all deceptions affect consumer decisions"); *Ameritox, Ltd. v. Millennium Labs., Inc.*, 2012 WL 33155, *3 (M.D. Fla. 2012) (granting 12(b)(6) dismissal where plaintiff failed to allege facts supporting material deception).

Plaintiffs' other allegations also fail to establish any basis for a false advertising claim. Neither Plaintiffs' conclusory labeling of A&F's legitimate offer as a "marketing scheme" nor third party newspapers' characterization of the offer as a "marketing ploy" converts A&F's

---

[13] Ex. 1 contains a copy of the letter A&F sent to MTV, of which the Court may take judicial notice because its contents are alleged in Plaintiffs' SAC at ¶ 25.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (Eleventh Circuit follows "incorporation by reference" doctrine, "under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed."); 5A Fed. Prac. & Proc. Civ. § 1327 (3d ed. 2011) ("when the plaintiff fails to introduce a pertinent document as part of her pleading, … the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading;").  Plaintiffs' false advertising claim rests on whether an offer was made and Plaintiffs do not dispute that an offer was made to MTV. (ECF No. 68 ¶ 25.)

[14] The by-line of the press release bears the date Aug. 16, 2011 at 6:50 pm (ECF No. 68-2 p. 2), and, the news articles Plaintiffs submit as exhibits state that the press release was released on "Tuesday" (which would be Aug. 16, 2011).  (ECF Nos. 68-2 p. 3, 68-6 p. 2.)  Plaintiffs' counsel recently acknowledged that the August 12 date was a typo.  (*See* Ex. 6.)

legitimate offer and effort to protect its brand into an actionable "commercial advertising or promotion." *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1281-82 (S.D. Fla. 2008) (false advertising claim failed as a matter of law where letters sent "not as a marketing and sales tool, but in an attempt to protect [defendant's] legal rights" and did not discourage recipients from buying plaintiff's goods); *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, 2004 WL 833595 (N.D. Tex. 2004) (granting 12(b)(6) dismissal where "commercial advertising" prong not met, as defendants did not make statements for "purpose of influencing consumers to buy the defendants' goods or services rather than [plaintiff's]").  A&F's press release also did not relate to the nature or qualities of either party's products.  *MoniLisa Collection, Inc. v. Clarke Products, Inc.*, 2011 WL 2892620 (M.D. Fla. 2011) (granting 12(b)(6) dismissal where statements about design origin of plaintiff's product not actionable under § 43(a)); *Porous Media Corp. v. Pall Corp.*, 201 F.3d 1058, 1059 (8th Cir. 2000) (no false advertising where "press releases did not concern the nature, characteristics, [or] qualities of either party's products").  Plaintiffs also fail to allege any facts to support their conclusory allegation of any cognizable damage to Plaintiffs as a result of any alleged false advertising. Plaintiffs' false advertising Count III is unsupported and implausible, and should be dismissed.

### D.    Plaintiffs Fail To Plead And Cannot Establish Required Elements Of Their Florida Unfair Competition Claim Under Fla. Stat. § 495.151

Where, as here, Plaintiffs have failed to state a claim for federal trademark infringement and unfair competition, related state law claims should also be dismissed.  *Investacorp*, 931 F.2d at 1521 (where federal infringement claim failed, so did related state claims); *HI Ltd. P'ship v. Winghouse of Fla., Inc.*, 347 F.Supp.2d 1256, 1259 (M.D. Fla. 2004) (where federal infringement and dilution claims were rejected corresponding state law claims also failed).

### 1.    Plaintiffs Omit Required Elements Of A Dilution Claim

14

Fla. Stat. § 495.151 establishes a cause of action for trademark dilution, and requires that a plaintiff plead and prove the following elements: 1) the plaintiff's mark is famous; 2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; 3) the defendant's use was commercial and in commerce; and 4) the defendant's use of the plaintiff's mark has likely caused dilution.[15]  *Z Prod., Inc. v. SNR Prod., Inc.*, 2011 WL 3754693, *5 (M.D.Fla. 2011). To state a claim for dilution, Florida law also requires that Plaintiffs be "the owner of a mark", Fla. Stat. 495.151(1); *see Trump Plaza of Palm Beaches Condo. Ass'n, Inc. v. Rosenthal*, 2009 WL 1812743, *9-*10 (S.D. Fla. 2009) (dismissing federal dilution claim for lack of standing where plaintiff failed to establish it was owner of the mark), and some proof that the use of a trademark decreases the plaintiff's commercial value.  *See Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1186 (11th Cir. 1985).  Under state antidilution statutes, courts have also required that the accused mark be nearly identical to the famous mark.  *See McCarthy* § 24:117.

Plaintiffs still fail to plead necessary elements of a state dilution claim under Fla. Stat. § 495.151.  First, Plaintiffs conclusorily plead that "The Situation" is a famous trademark, but do not and cannot allege sufficient facts to establish fame, especially given the short period of alleged use, and the lack of any facts showing the amount or extent of advertising or sales.[16]  "It is clear that anti-dilution statutes are designed to protect only strong, well-recognized marks." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 (5th Cir. 1997); *Carnival Corp.*, 74 F.Supp.2d at 1270-71 (mark not famous under federal or state dilution law despite over 20 years of use and extensive advertising and sales).  Second, Plaintiffs still fail to plead that their alleged

---

[15] Plaintiffs also assert "false advertising" under § 495.151, but this statue does not provide a cause of action for false and misleading advertising, and should therefore be dismissed.

[16] Plaintiffs' vaguely assert use in "2009," but the earliest alleged first use date of "The Situation" in MPS' applications is Dec. 3, 2009 (ECF No. 68-1 p. 2), which was the first date that Jersey Shore aired. *See* http://www.mtv.com/shows/jersey_shore/season_1/video.jhtml

mark became famous *before* A&F used its parody slogan on t-shirts in 2010.[17]  Third, Plaintiffs do not plead any allegations showing that A&F's parody has likely caused dilution (and cannot as parody is protected by the First Amendment), and as shown in § B.1 cannot establish that they were the owner of any alleged "The Situation" trademark.  Fourth, as established in § B.2 above, Plaintiffs cannot show a likelihood of confusion between its alleged mark and A&F's parody slogan on the t-shirt (which is strikingly different), and therefore cannot establish a dilution claim under Florida law.  *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 533 F.Supp. 75, 84 (S.D.Fla. 1981) (finding that not likely Suave shoe would be confused with Brooks shoe means plaintiff failed to prove a claim under Fla. Stat. § 495.151).

## 2.    A&F's "Use" Is Not Actionable Under Florida Dilution Law

As established in § B.3, A&F's t-shirt is a parody protected by the First Amendment. *McCarthy* § 24:90 ("embodied in both the Constitutional guarantee of free speech" and dilution law is "general rule [that] permits anyone, competitor, critic or comedian, to use a famous mark to make fun of or to criticize the products or policies of the mark owner"); *Jordache Enters.*, 828 F.2d at 1487,1489-90 (affirming failure of dilution claim; "because of the parody aspect of Lardashe, it is not likely that public identification of JORDACHE with the plaintiff will be eroded; indeed, parody tends to increase public identification of a plaintiff's mark with the plaintiff").  Plaintiffs' allegations relating to an alleged advertising campaign also cannot form the basis for liability under § 495.151, because they relate only to third party news coverage of

---

[17] Plaintiffs allegation that MPS is *currently* selling t-shirts does not establish trademark use or fame before A&F's use in Feb. 2010.  (ECF No. 68 ¶¶ 68-69.)  Plaintiff also allege in ¶ 68 that they have distributed and/or sold goods or services bearing their alleged marks since 2009, but in ¶ 11 allege that such distribution and/or sale did not begin until 2010.  Such contradictory allegations cannot be accepted as true and are insufficient to establish the requisite fame before A&F's use.

A&F's offer to a public figure, a newsworthy event, and the statute exempts "all forms of news reporting and news commentary." § 495.151(3)(c).

     **E.**     **Plaintiffs Cannot Establish A Claim For Injury To Business Reputation**

An injury to business reputation claim is subsumed within Fla. Stat. § 495.151, already alleged in Count IV, for which Plaintiffs fail to state a claim as discussed above in § D.  *See Tally-Ho*, 889 F.2d at 1024 (§ 495.151 "permits any trademark owner, whether registered or unregistered, to prohibit either a non-competitor's or competitor's use of a similar mark *if there is a likelihood of injury to business reputation* or dilution of the mark's distinctive quality.") (emphasis added).  Further, Plaintiffs' allegations consist of the same conduct already alleged and considered under its trademark claims, *i.e.*, confusion as to business affiliation or approval or the origin of Plaintiffs' goods (*cf.* ECF No. 68 ¶ 77 to ¶¶ 40, 48), and should be dismissed on this basis. *See Freedom Savings*, 757 F.2d at 1186 (no unfair competition holding where plaintiff did not complain of conduct not already considered in infringement claim).

     **F.**     **Plaintiffs Fail To State A Claim Under Fla. Stat. § 540.08 Or For Common Law Misappropriation**

          **1.**     **A&F's Parody and Press Release Are Protected By The First Amendment**

Fla. Stat. § 540.08 provides an action for unlawful commercial exploitation of a name or likeness, otherwise known as a right of publicity claim.  "[T]he common usage of the term 'commercial' in the commercial misappropriation and right of publicity context is indeed limited to the promotion of a product or service as the courts construing section 540.08 have concluded, [and] also indicate[s] that such works should be protected by the First Amendment."  *Tyne v. Time Warner Ent. Co.*, 901 So.2d 802, 810 (2005).  "[M]erely using an individual's name or likeness in a publication is not actionable under § 540.08," *Tyne v. Time Warner Ent. Co.*, 204 F.Supp.2d 1338, 1341 (2002), as "the right of publicity has not been held to outweigh the value

of free expression." [18] *Tyne*, 901 So.2d at 810; *Loft v. Fuller*,  408 So.2d 619, 623 (Fla.App. 4

Dist. 1981) (12(b)(6) dismissal as § 540.08 claim not "meant to be construed to bar the use of

people's names in such a sweeping fashion").    Here A&F's press release *responded* to

Sorrentino's wearing of A&F's brand in front of millions of viewers.   A&F's press release

identifying the subject of its response is free speech protected by the First Amendment and fails

to state a claim under any construction of the statute that would be constitutional.[19]  Further,

A&F's t-shirt did not use Sorrentino's "name or likeness," but rather "The Fitchuation" and is

parody also protected by the First Amendment. "[R]ight of publicity derived from public

prominence does not confer a shield to ward off caricature, parody and satire.   Rather,

prominence invites creative comment."  *Winter v. DC Comics*, 30 Cal. 4th 881, 887, 892 (Cal.

2003) (parodic portrayal protected by First Amendment against right of publicity claim).[20]

### 2.        A&F Did Not Use Sorrentino's Name To Directly Promote A Product

The purpose of Fla. Stat. § 540.08 "is to prevent the use of a person's name or likeness to

'directly promote a product or service.'"  *Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp.

2d 1352 (N.D. Fla. 2010).  The mere use of a name to accurately identify an individual in a non-

commercial manner is not actionable.  *Id.* at 1360 (540.08 not violated by use of professor's

---

[18] Florida courts explain that a right of publicity violation is for uses that "associate the individual's name or his personality with something else."  *Loft*, 408 So.2d at 623; *Tyne*, 901 So.2d at 808.  Here, A&F's press release was explicitly *disclaiming* any association.

[19] The Court has the duty "to construe a statute, if reasonabl[y] possible, in such a manner as to support its constitutionality-to adopt a reasonable interpretation of a statute which removes it farthest from constitutional infirmity."  *Tyne*, 901 So.2d at 810.

[20]   The fact that A&F's parody was on humor t-shirts scarcely disqualifies the use from protection from the First Amendment.  *Cardtoons*, 95 F.3d at 969 ("[t]he cards are no less protected because they provide humorous rather than serious commentary"); *Daly v. Viacom*, Inc., 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) ("a cause of action for appropriation of another's 'name and likeness' may not be maintained against expressive works, whether factual or fictional," and "[e]ntertainment is entitled to the same constitutional protection as the exposition of ideas").

name to identify his courses in published note packages, even though offered for sale); *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (affirmed "as a matter of law" that use of name was not commercial use as "an interpretation that the statute absolutely bars the use of an individual's name without consent for any purpose would raise grave questions as to constitutionality"). A&F did not use Sorrentino's name on any product, but rather to identify Sorrentino as the subject of its responsive press release. Such use is insufficient to state a claim, as it did not directly promote a product or service, and explicitly disclaimed any association with Sorrentino. Additionally, Fla. Stat. § 540.08(4)(a) specifically exempts "[t]he publication, printing, display, or use of the name or likeness of any person in any … news medium…as part of any bona fide news report or presentation having a current and legitimate public interest." The entirety of the challenged communication consists of a press release responding to Sorrentino's wearing of A&F's brand. That this was a matter of "current and legitimate public interest," was confirmed by the fact that third party news agencies independently chose to cover A&F's response to a notorious public figure.[21]

### 3.    Plaintiffs' Common Law Misappropriation Claim Also Fails

In the Eleventh Circuit a common law misappropriation claim is "substantially identical" to a right of publicity claim under Fla. Stat. 540.08 and "should be resolved on the same basis." *Almeida v. Amazon.com*, 456 F.3d 1316, 1320 fn. 1 (11th Cir. 2006); *Lane v. MRA Holdings, LLC*, 242 F. Supp.2d 1205, 1220 (M.D. Fla. 2002) (elements of commercial misappropriation of likeness "coincide with elements of unauthorized publication of name or likeness in violation of Fla. Stat. 540.08"). Accordingly, Count VIII fails to state a claim for relief for the same reasons as its Fla. Stat. § 540.08 claim, and should be dismissed.

---

[21] *See Faulkner Press*, 756 F. Supp. 2d at 1360 (statute not violated when person's identity "used 'in news reporting, commentary, entertainment,…or in advertising incidental to such uses'").

**G.      Plaintiffs Fail to Plead And Prove Elements Of A Fla. Stat. § 817.41 Claim**

"Misleading advertising is a particularized form of fraud." *Rollins, Inc. v. Butland*, 951 So.2d 860, 877 (Fla.App. 2 Dist. 2006).  To prove a violation of Fla. Stat. 817.41, "Florida law requires the plaintiff to prove reliance on the alleged misleading advertising, as well as each of the other elements of the common law tort of fraud in the inducement." *Locke v. Wells Fargo Home Mort.*, 2010 WL 4941456, (S.D. Fla. 2010) (granting 12(b)(6) dismissal).[22]  As shown above in Section C, Plaintiffs have not alleged actionable statements of fact, rather than opinions, and the one statement of fact that an offer was made is not false.  *See Hill Dermaceuticals, Inc. v. Rx Solutions*, 306 Fed. Appx. 450, 454-455 (11th Cir. 2008) (unpublished) (affirming 12(b)(6) dismissal of advertising claim in absence of any false statement); *Kramer v. Unitas*, 831 F.2d 994, 998-99 (11th Cir. 1987) ("plaintiffs failed to surmount one elementary hurdle: neither [defendant] made *any* false representations").  Plaintiffs have also not alleged that they or any consumers acted in reliance on A&F's press release.  Nor does A&F's press release that does not mention its products or defendant's alleged products meet the definition of "misleading advertising."[23]  *Cityscapes Intern. Realty v. CCS-Bel Mare, LLC*, 2011 WL 2669666, (M.D. Fla. 2011) (12(b)(6) dismissal due to lack of allegations relating to sale of property or service).

**III.    Conclusion**

A&F respectfully requests that the Court dismiss Plaintiffs' SAC in its entirety.

---

[22] "The elements of common law fraud are: (1) A false statement of fact; (2) known by the defendant to be false at the time is was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) acted on by the plaintiff in reliance on the representation; and (5) resulting damage to the plaintiff." *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 1997 WL 1106569, *8 (S.D. Fla. 1997) (summary judgment dismissal of 817.41 claim where plaintiff failed to show commercial induced it to do any act and plaintiffs had not asserted that they relied on ads).

[23] *See* Fla. Stat. § 817.40(5) (defining "misleading advertising" as statements "which are known … to be untrue or misleading, and which are or were so made…with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services …").

Respectfully submitted,

/s Gerald J. Houlihan

Gerald J. Houlihan (Florida Bar No. 0458430)
Email:  houlihan@houlihanlaw.com
Houlihan & Partners, P.A.
2332 Galiano Street, Second Floor
Miami, Florida 33134
Telephone:     (305) 460-4091
Facsimile:     (305) 397-0955


John G. Froemming, Esq. (*pro hac vice*)
jfroemming@jonesday.com
Jessica D. Bradley, Esq. (*pro hac vice*)
jbradley@jonesday.com
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:     202-879-4693
Facsimile:     202-626-1700


Attorneys for Abercrombie & Fitch Stores, Inc. and
Abercrombie & Fitch Co.

21

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s Gerald Houlihan_____

Gerald J. Houlihan

## SERVICE LIST

Richard Charles Wolfe, Esq.
Email: rwolfe@wolfelawmiami.com
Darren Adam Heitner, Esq.
Email: dheitner@wolfelawmiami.com
Wolfe Law Miami, P.A.
175 SW 7 Street, Penthouse 2410
Miami, FL 33131
Telephone: 305-384-7370
Facsimile: 305-384-7371

Attorneys for MPS Entertainment, LLC
and Michael P. Sorrentino

22